1
2
3
4
5
6

HONORABLE TANA LIN

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9   DEBBIE CHAVES, DANIELLE WARD, and
    AMANDA EVANS, on behalf of themselves
10  and all others similarly situated,

11          Plaintiffs,

12      v.

13  AMAZON.COM SERVICES LLC,

14          Defendant.

15

Case No.: 2:21-cv-01213-TL

**MOTION TO DISMISS SECOND
AMENDED CLASS ACTION
COMPLAINT**

NOTED FOR CONSIDERATION:
MARCH 4, 2022

ORAL ARGUMENT REQUESTED

16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF CONTENTS

2

**PAGE**

3  INTRODUCTION ................................................................................................................1

4  BACKGROUND ................................................................................................................2

5
      A.    Plaintiffs Purchased In-game Currency (for Use While Playing Video
6            Games) and a Video Game Subscription. ........................................................2

7     B.    Amazon Collects and Remits Sales Tax as the Law Requires................................4

8     C.    Amazon Discloses that It Will Collect Sales Tax, Including on In-Game
9            Currency and Gaming Subscriptions. ...........................................................5

10  ARGUMENT ....................................................................................................................7

11    I.    THE PRODUCTS ARE NOT "GIFT CARDS" AND AMAZON
            PROPERLY COLLECTED TAX ON THEIR SALES.........................................8

12    II.   PLAINTIFFS' MASSACHUSETTS LAW CLAIM FAILS
13          REGARDLESS OF WHETHER THE PRODUCTS WERE NOT
            TAXABLE................................................................................................11

14
            A.    Amazon's Alleged Conduct Is Not "Trade or Commerce" Under
15                Massachusetts Gen. Laws ch. 93A. ...................................................12

16          B.    Massachusetts' Administrative Remedy Is Exclusive. ..............................13

17    III.  PLAINTIFFS' NEW YORK GENERAL BUSINESS LAW CLAIM
18          FAILS REGARDLESS OF WHETHER THE PRODUCTS WERE NOT
            TAXABLE................................................................................................15

19
            A.    New York Tax Law Preempts Plaintiffs' Claims Under the
20                NYGBL..........................................................................................15

21          B.    Amazon's Conduct Is Exempt Under Section 349 of the NYGBL. ...........17

22    IV.   PLAINTIFFS' WASHINGTON CPA CLAIM FAILS .........................................18

23
            A.    Amazon's Alleged Conduct Did Not Occur in "Trade or
24                Commerce."..................................................................................19

25          B.    Amazon's Alleged Conduct Is Exempt From Suit Under the
                  WCPA..........................................................................................20

26
      V.    PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF
27          CONTRACT.............................................................................................20

28  CONCLUSION.................................................................................................................21

# TABLE OF AUTHORITIES

**CASES**      **PAGE(S)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................7, 17

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................7, 17

*Benavidez v. Cnty. of San Diego*,
    993 F.3d 1134 (9th Cir. 2021) .............................................................................7

*Blakey v. Blakey*,
    186 Wn. App. 1037, 2015 WL 1467261 (2015) .................................................21

*Browne v. Avvo, Inc.*,
    525 F. Supp. 2d 1249 (W.D. Wash. 2007)..........................................................19

*Cabot Corp. v. Baddour*,
    477 N.E.2d 399 (Mass. 1985) .............................................................................13

*Citrix Sys., Inc. v. Comm'r of Revenue*,
    139 N.E.3d 293 (Mass. 2020) ...............................................................................8

*City of New York v. Smokes-Spirits.Com, Inc.*,
    911 N.E.2d 834 (N.Y. Ct. App. 2009) ................................................................15

*Cohen v. Hertz Corp.*,
    No. 13 Civ. 1205 (LTS)(AJP), 2013 WL 9450421 (S.D.N.Y. Nov. 26, 2013) ................15, 16

*Darviris v. Petros*,
    812 N.E.2d 1188 (Mass. 2004) ...........................................................................14

*Davidson v. Rochester Tel. Corp.*,
    558 N.Y.S.2d 1009 (3d Dep't 1990) ..............................................................16, 18

*Estler v. Dunkin' Brands, Inc.*,
    691 F. App'x 3 (2d Cir. 2017) ........................................................................15, 16

*Feeney v. Dell, Inc.*,
    908 N.E.2d 753 (Mass. 2009) ..........................................................................12, 13

*Fid. Mortg. Corp. v. Seattle Times Co.*,
    213 F.R.D. 573 (W.D. Wash. 2003) ................................................................7, 17

*Fleming v. National Union Fire Ins. Co.*,
    445 Mass. 381, 837 N.E.2d 1113 (2005) ...........................................................14

*Gilbert v. Home Depot*,
    No. 13-CV-853S, 2014 WL 4923107 (W.D.N.Y. Sept. 30, 2014).......................16

*Guterman v. Costco Wholesale Corp.*,
    927 F. 3d 67 (2d Cir. 2019)...........................................................................16, 17

# TABLE OF AUTHORITIES
### (continued)

CASES                                                                                    PAGE(S)

*Haberman v. Wash. Pub. Power Supply Sys.,*
   109 Wn.2d 107, 744 P.2d 1032 (1987)...................................................18

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,*
   105 Wn.2d 778, 719 P.2d 531 (1986)....................................................18

*Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.,*
   58 F. Supp. 3d 1166 (W.D. Wash. 2014)............................................20, 21

*Holt v. Town of Stonington,*
   765 F.3d 127 (2d Cir. 2014)...........................................................15, 17

*Household Retail Servs., Inc. v. Comm'r of Revenue,*
   859 N.E.2d 837 (Mass. 2007) ..............................................................12

*Knievel v. ESPN,*
   393 F.3d 1068 (9th Cir. 2005) ...........................................................4, 6

*Koch v. Acker, Merrall & Condit Co.,*
   967 N.E.2d 675 (N.Y. Ct. App. 2012) ....................................................15

*Kupferstein v. TJX Companies, Inc.,*
   No. 15-cv-5881 (NG), 2017 WL 590324 (E.D.N.Y. Feb. 13, 2017)................16, 18

*Kwan v. SanMedica Int'l,*
   854 F.3d 1088 (9th Cir. 2017) .............................................................7

*Lafayette Place Assocs. v. Boston Redevelopment Auth.,*
   694 N.E.2d 820 (Mass. 1998) ..............................................................12

*Lantner v. Carson,*
   373 N.E.2d 973 (Mass. 1978) ..............................................................12

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
   519 F.3d 1025 (9th Cir. 2008) .............................................................7

*McCarthy Fin., Inc. v. Premera,*
   182 Wn.2d 936, 347 P.3d 872 (2015).....................................................20

*McGonagle v. Home Depot U.S.A., Inc.,*
   915 N.E.2d 1083 (Mass. Ct. App. 2009) ...........................................12, 13, 14

*Miller v. United States Bank, N.A.,*
   72 Wn. App. 416, 865 P.2d 536 (1994)...................................................20

*Nemykina v. Old Navy, LLC,*
   461 F. Supp. 3d 1054 (W.D. Wash. 2020).............................................7, 17

*Petersen v. Baseline Eng'g., Inc.,*
   176 Wn. App. 1017, 2013 WL 4774448 (2013).........................................21

## TABLE OF AUTHORITIES
### (continued)

CASES                                                                    PAGE(S)

*Raby v. Onsrud Cutter, LP*,
    No. C09-0863JLR, 2009 WL 5170187 (W.D. Wash. Dec. 17, 2009) .................................... 21

*Reiter Oldsmobile, Inc. v. General Motors Corp.*,
    378 Mass. 707, 393 N.E.2d 376 (1979) ........................................................... 14

*Robinson v. Avis Rent A Car Sys., Inc.*,
    106 Wn. App. 104, 22 P.3d 818 (2001) ........................................................... 18

*Stiegler v. Saldat*,
    No. C14-1309 TSZ, 2015 U.S. Dist. LEXIS 193516 (W.D. Wash. Oct. 23,
    2015), *aff'd*, 707 F. App'x 478 (9th Cir. 2017) ............................................ 18, 19

*Togut v. Forever 21, Inc.*,
    285 F. Supp. 3d 643 (S.D.N.Y. Jan. 16, 2018) .................................................. 16, 17

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ..................................................................... 4

STATUTES AND RULES

12 C.F.R.§ 1005.1 ...................................................................................... 9

12 C.F.R.§ 1005.20 .................................................................................... 9

12 C.F.R., Pt. 1005, Supp. I § 1005.20(a)(3) ........................................................ 9

Fed. R.Civ. P. 8(a) .................................................................................. 17

Fed. R. Civ. P. 9(b) ............................................................................... 7, 8

Fed. R. Civ. P. 12(b)(6) ........................................................................ 1, 7, 19

Mass. Gen. Laws ch. 62C, §§ 36-41 ................................................................ 13, 14

Mass. Gen. Laws ch. 64H, § 3 ................................................................... 8, 12, 19

Mass. Gen. Laws ch. 93A, §§ 2-3 ............................................................ 11, 12, 13, 14

N.Y. Gen. Bus. Law § 349 .................................................................... 14, 15, 17, 18

N.Y. Gen. Bus. Law § 350 ....................................................................... 14, 15

N.Y. Gen. Bus. Law § 396-i ....................................................................... 9

N.Y. Tax Law § 1131 ........................................................................... 8, 15

N.Y. Tax Law § 1132 .............................................................................. 8

N.Y. Tax Law §§ 1139-40 ...................................................................... 15, 16, 17

N.Y. Tax Law §§ 1145, 1817 ................................................................... 8, 18, 19

1   RCW § 19.86.010(2) ....................................................................................18

2   RCW § 19.86.170 ..................................................................................18, 20

3   RCW § 82.04.257 .......................................................................................8

4   RCW § 82.08.020 .......................................................................................8

5   RCW § 82.08.050(1)-(2) .............................................................................8

6   WAC 458-20-15503, pts. 2-3 ......................................................................8

7   **OTHER AUTHORITIES**

8   35 Mass. Prac., Consumer Law § 4:15 (3d ed.) .............................................14

9   *Marketplace Tax Collection*,
10      https://www.amazon.com/gp/help/customer/display.html? nodeId=202211260 ....................5

11   NYSDTF Office of Counsel Advisory Opinion Unit (2015), Petition No.
     S100920A, 2015 N.Y. Tax Lexis 38, available at
12      https://www.tax.ny.gov/pdf/advisory_opinions/sales/a15_25s.pdf ..................................10, 11

13   *Tax on Digital Products and Services*,
     https://www.amazon.com/gp/help/customer/display.html? nodeId=20207473 ....................5

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Amazon.com Services

2  LLC respectfully moves the Court to dismiss the Second Amended Class Action Complaint

3  ("SAC") filed by Plaintiffs Debbie Chaves, Danielle Ward, and Amanda Evans, with prejudice

4  and without leave to amend, for failure to state a claim.

5                                   **INTRODUCTION**

6    Plaintiffs have sued Amazon for breach of contract, and violation of New York,

7  Massachusetts, and Washington consumer protection laws, for collecting sales tax that the law

8  required Amazon to collect.  Plaintiffs' claims rest on a misguided argument that certain items

9  they purchased on amazon.com were supposedly tax-exempt "digital and gift card" products.  But

10 Plaintiffs are wrong: applicable law is clear that the items they identify—digital codes to access

11 and subscribe to videogame software—were *not* exempt from sales tax.  And even if those products

12 were tax-exempt, the proper procedure would be to seek a refund from the state taxing authorities

13 in the states that imposed the taxes.  That must be done through administrative remedies that

14 preempt this lawsuit against Amazon, which is merely serving as a ministerial intermediary

15 collecting tax on the states' behalf.

16    Plaintiffs also speculate, with no factual or legal basis, that Amazon might have failed to

17 remit taxes for products sold by third-party sellers.  *See* SAC ¶¶ 40-45 (pp. 13-14), 50 (p. 15).[1]

18 But these allegations are at best irrelevant, as Plaintiffs purchased the products at issue directly

19 from Amazon, not from third parties.  Plaintiffs make no claim, nor could they, that Amazon did

20 not remit the tax it collected for any of the transactions at issue.

21    Plaintiffs' breach of contract claim also fails as a matter of law.  The only contract Plaintiffs

22 identify—Amazon's Conditions of Use and incorporated Help pages—unambiguously discloses

23 that Amazon will collect the taxes at issue.

24    Even with the benefit of a preview of Defendant's motion to dismiss the First Amended

25 Complaint, Plaintiffs' Second Amended Complaint suffers from the same fatal defects as its

26

27 [1] Like the FAC (and despite Amazon flagging the errors in its prior motion), the SAC is mis-numbered and several
   of its paragraphs have duplicate numbers or are out of order.  To minimize confusion, citations to the SAC in this brief
28 include both paragraph numbers and applicable page numbers.

1  predecessor.  Plaintiffs have shown that their complaint cannot be cured by further amendment

2  and that it should be dismissed with prejudice.

3  **BACKGROUND**

4  Amazon operates an online store at amazon.com, where Amazon sells products to

5  customers directly as a retailer and also provides a marketplace for independent third-party sellers.

6  For applicable purchases made through amazon.com, regardless of who sells the product, Amazon

7  complies with state and local laws requiring it to collect sales and use taxes, and to remit the taxes

8  to the relevant taxing authorities.

9  All sales through amazon.com are subject to Amazon's Conditions of Use ("COUs"),

10  which govern the relationship between Amazon and its customers.  Plaintiffs invoke and rely on

11  the COUs throughout their Complaint.  *See*, *e.g.*, SAC ¶¶ 3-5 (pp. 1-2), 31 (p.11), 37 (p.13),

12  58 (p. 17), 45-48 (p. 22), 51 (p. 23), 55 (p. 23), 60 (p. 24).  They also acknowledge that various

13  policies in Amazon's "Help & Customer Service" pages (the "Help pages") are "incorporated into"

14  the COUs and govern the use of Amazon services, *id.* ¶ 3, n.2 (p. 1), and Plaintiffs rely on the Help

15  pages to support their claims, *see id.* ¶ 5, n.4 (p. 2).  Accordingly, these materials are incorporated

16  into the SAC and the Court may consider them in deciding this motion.

17
18  **A.   PLAINTIFFS PURCHASED IN-GAME CURRENCY (FOR USE WHILE PLAYING VIDEO GAMES) AND A VIDEO GAME SUBSCRIPTION.**

19  Plaintiffs accuse Amazon of unlawfully charging state sales tax on two products, described

20  at their respective amazon.com pages as "Robux gift card" and "PlayStation Plus:  1 Month

21  Membership [Digital Code]" ("Products").  SAC ¶¶ 7-29 (pp. 2-11), 67-100 (pp. 25-32).

22  **Robux.**  Roblox is an online game platform that allows users to program games and play

23  games created by others.  Plaintiffs allege that a "Robux gift card" is a "gift card" or "gift

24  certificate" within the meaning of federal and state regulations.  SAC ¶¶ 10-12 (pp. 3-4).  From

25  there, they argue that because "gift cards" are allegedly non-taxable in Massachusetts and New

26  York, Amazon violated those states' consumer protection laws by collecting tax on sales of the

27  Robux product.  *Id.* ¶¶ 8-10 (pp. 2-3).  Plaintiffs also allege that Amazon breached its contract with

28

Plaintiffs by charging sales tax on the Robux product because Amazon's Help page states that no sales tax will be charged when customers purchase "gift cards." *See id.* ¶ 5, n.4 (p. 2).[2]

Plaintiffs' theory is simply wrong. While Roblox chose to call them "gift cards," the Robux products at issue plainly are *not* gift cards for sales tax purposes because they are not issued in a "specified amount" of real money, have no real-world monetary value, and are not available for purchases of real-world goods and services. *See* Argument Section I below. They instead provide digital codes that have value only in one virtual milieu: during Roblox game play to access special gaming abilities, clothing, accessories, and tools for use by the player's gaming character. *See* SAC ¶ 8 (pp. 2-3).

That Roblox chose to call the digital code a "gift card" is obviously not determinative of its tax status. And the amazon.com product page on which Plaintiffs rely makes it inescapably clear that a "Robux Gift Card" is in fact an "Online *Game Code*," that is, something that functions solely within a game by granting access to software features. *See id.* (emphasis added). That same page shows, for example, that $10 gets the purchaser 800 "Robux" to use in the game, and that "Robux" are good solely for purchasing "new items *for your avatar* and additional perks *in your favorite games.*" *Id.* (emphases added). Therefore, the purchase of a "Robux gift card" is not an exchange of cash equivalents; it is the exchange of money for a good—in this case a video game enhancement—which is taxable in the relevant jurisdictions.

**PlayStation Plus 1-Month Membership.** Plaintiffs also allege that Amazon improperly collected sales tax on sales of the "PlayStation Plus: 1 Month Membership [Digital Code]," which Plaintiffs characterize as a "Membership Card." *Id.* ¶¶ 24-25 (p. 8). Without reference to statutory or other definitions, or any factual support, Plaintiffs dub the Membership Card a "virtual good" that "function[s] as a gift card in the practical sense" and allege that, consequently, sales of that product are exempt from New York sales tax. *Id.* ¶¶ 25-26 (pp. 8-9). Plaintiffs include a screenshot ostensibly in support of their allegation, but nothing in the screenshot relates to the nature of the

---

[2] That statement is unsurprising. Sales and use taxes generally are not due on actual gift cards because they are cash equivalents issued in a specified dollar amount for some future transaction, on which sales or use tax will be charged if that later transaction is taxable. *See infra*, Argument Section I.

product; it shows only the item's name, an image representing it, product ratings, and a price ("$9.99"). *Id.* ¶ 25 (p. 8). Plaintiffs misleadingly *omit* the product detail page, which *does* describe the item. Attached as Exhibit 1 to the Declaration of Brian Buckley ("Buckley Decl."),[3] filed in support of this motion, is an image of the full detail page. That page plainly and accurately describes the product's function: it allows users to "Get PlayStation games to download every month. Get hand-picked PlayStation games each month to download and play as long as you're a member." *Id*. In other words, Plaintiffs acknowledge that the PlayStation Plus Membership is just that, a "1-month Membership" to a library of PlayStation video games. *See id.* ¶¶ 24-25 (p. 8). Contrary to Plaintiffs' characterizations, that membership does not "function" as a "gift card" in any sense.

## B.   AMAZON COLLECTS AND REMITS SALES TAX AS THE LAW REQUIRES.

When Amazon collects and remits sales tax to state taxing authorities, it does not act for its own financial benefit, but performs a state-mandated ministerial function. As addressed below in Argument Sections II-IV, Amazon's collection and proper remittance of sales tax is exempt from claims under Massachusetts, New York, and Washington's consumer protection laws.

Presumably recognizing that Amazon's remittance of sales tax to the states defeats their consumer-protection claims, Plaintiffs tried to skirt the issue in the First Amended Complaint by alleging only that it is "unclear" whether Amazon remitted the taxes at issue. Dkt. 13, ¶ 34. Amazon pointed out this pleading deficiency in its earlier motion to dismiss. *See* Motion to Dismiss the First Amended Complaint (Dkt. 18) at 8 (Plaintiffs "do not even allege that Amazon … failed to remit the collected sales tax."). Plaintiffs' attempt to fill that gap in the SAC is no more successful. Now Plaintiffs allege only that "for at least part of the class period," Amazon "***possibly***" failed to remit the collected sales tax. *See* SAC ¶¶ 40 (p. 13), 50 (p. 15) (emphasis

---

[3]  The Court may take judicial notice of the product detail page pursuant to the "incorporation by reference doctrine." *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.") (internal citation omitted); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (incorporating by reference complete copies of websites where the complaint included only excerpts because "[i]n evaluating the context in which the statement appeared, we must take into account 'all parts of the communication that are ordinarily heard or read with it'") (internal citations omitted). It is axiomatic that Plaintiffs cannot rely on part of a document or website while ignoring other pertinent parts of the same document or site.

added).   Plaintiffs allege further that, "when [Amazon] collected taxes for products sold by merchants, it instead sent the collected taxes to those merchants (if at all), who were then responsible for remitting the taxes." *Id*. ¶ 40 (p. 13).  That is, for sales by third-party sellers on amazon.com, Plaintiffs speculate that, for an unspecified period, Amazon "possibly" remitted sales tax to the sellers rather than to state authorities.[4]

Even if that speculation were true, it is meaningless because the *only* purchases Plaintiffs identify in the SAC are retail sales *directly from Amazon*, not from third-party sellers.  *See id*. ¶ 8 (pp. 2-3) (screenshot showing "Ships from and sold by Amazon.com Services LLC"); Buckley Decl. Ex. 1 (same).  Accordingly, Plaintiffs lack standing to assert any claims with respect to third-party sales, and any allegations regarding such sales are irrelevant here.  Tellingly, Plaintiffs do *not* allege that Amazon failed to remit sales tax it collected *on Plaintiffs' transactions*, or on any Amazon retail sales for that matter.  Nor could they in good faith, which is why Plaintiffs conspicuously avoided making that allegation in all three iterations of their complaint.

## C.   AMAZON DISCLOSES THAT IT WILL COLLECT SALES TAX, INCLUDING ON IN-GAME CURRENCY AND GAMING SUBSCRIPTIONS.

Plaintiffs' claim that Amazon failed to disclose that it would collect sales tax on Plaintiffs' transactions is undermined by the same documents Plaintiffs rely on in the SAC.  For example, Amazon's Help pages contain disclosures about when and how Amazon collects sales tax on in-game currency and gaming subscriptions, including that "[s]ome states consider electronically delivered products, services, or subscriptions taxable and may be subject to state and local jurisdiction tax."  As examples of such potentially taxable goods, the Help page identifies "digital

---

[4]  As Amazon's Help pages explain, marketplace-facilitator legislation "shifts the sales tax collection and remittance obligations from a third party seller to the marketplace facilitator."  *See* Amazon.com, *Marketplace Tax Collection*, https://www.amazon.com/gp/help/customer/display.html? nodeId=202211260 (last visited Jan. 7, 2022).  The SAC does not and cannot allege that Amazon failed to comply with marketplace-facilitator laws.  Under Washington, New York, and Massachusetts laws, Amazon has been collecting and remitting sales tax on third-party sales since at least 2019, *before* any of Plaintiffs' alleged purchases. *See* SAC ¶¶ 52-54 (p. 16).  But Plaintiffs' claims would fail even if they had purchased the Products from third-party sellers prior to the implementation of marketplace-facilitator legislation in 2019.  At that time, third-party sellers could use tax calculation services where Amazon would collect tax from customers and pass it to sellers, who were responsible for remittance to state authorities.

gaming," "in-game currency," and "gaming subscriptions."  *Id.*[5]   In other words, Amazon expressly told Plaintiffs that it would collect sales tax, if required by certain states, on precisely the types of items at issue here, *i.e.*, the Robux in-game currency and the PlayStation Plus gaming subscription.

Not only did Amazon notify Plaintiffs in advance that these Products might be subject to sales tax, but Plaintiffs also knew *at the time of the transactions* that sales tax would be collected. The SAC includes screenshots of the receipts that Plaintiffs received for the Products.  Those receipts clearly show that tax was collected on both items, as well as the specific amounts of the taxes.  *See* SAC ¶¶ 13 (pp. 4-5), 21 (p. 7), 27 (pp. 9-10), 33-34 (p. 12).[6]  Notably, Plaintiffs do *not* allege that, upon realizing they had been charged sales tax, they returned the Products and requested a refund.

Despite being on notice in multiple ways that the Products were subject to sales tax, Plaintiffs accuse Amazon of "willful and knowing" conduct that amounts to "fraudulent overcharging practices."  *Id.* ¶ 51 (p. 16).  But nowhere do Plaintiffs state "the who, what, when, where, and how" of the allegedly fraudulent conduct, as required by the heightened pleading standard for claims that sound in fraud.  Nor do Plaintiffs allege or explain what Amazon supposedly gained from these allegedly fraudulent practices.

As discussed below, this dispute does not belong in this Court.  If Plaintiffs believe that Amazon improperly charged them sales taxes, administrative procedures clearly preempt their claims here.  And Plaintiffs do not allege that they undertook any such administrative procedures. Plaintiffs' breach of contract claim is also unsuccessful:  the very contract Plaintiffs rely on expressly notified them that their purchases would be subject to tax.  The Court should dismiss the SAC in its entirety with prejudice.

---

[5]  Amazon.com, *Tax on Digital Products and Services*, https://www.amazon.com/gp/help/customer/display.html?nodeId=202074730 (last visited Nov. 4, 2021).  Again, because Plaintiffs incorporate and rely on the Help pages, the Court may and should consider the entirety of those pages, not just those sections that Plaintiffs selectively excerpt to support their claims.  *Knievel v. ESPN*, 393 F.3d at 1076.

[6]  Plaintiffs also strategically plead around a fact that all amazon.com users know:  the same sales tax information is displayed to the customer *before* the purchase.  Plaintiffs show the Court the first and third steps of the order process but hide the interstitial page where the customer makes the decision to buy.  If necessary, Amazon can demonstrate to the Court at the appropriate time that customers are informed in advance if sales tax will be collected.

1

<u>**ARGUMENT**</u>

2   The Rule 12 standards are well-established.  At the pleading stage, Rule 12(b)(6) allows

3   the Court to dispense with spurious or legally flawed complaints before the parties begin the

4   expensive and burdensome discovery process, particularly in a putative class action like this one.

5   A court should dismiss under Rule 12(b)(6) where, under the applicable law, "the allegations in a

6   complaint, however true, could not raise a claim of entitlement to relief."  *Bell Atlantic Corp. v.*

7   *Twombly*, 550 U.S. 544, 558 (2007).  Although the Court must "accept factual allegations in the

8   complaint as true and construe the pleadings in the light most favorable to the nonmoving party,"

9   *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation

10  omitted), mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

11  action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S.

12  at 555).  Legal conclusions in a complaint will not save it from dismissal; the complaint must

13  contain sufficient supporting factual allegations.  *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096

14  (9th Cir. 2017).  And "conclusory allegations of law and unwarranted inferences are insufficient

15  to defeat a motion to dismiss."  *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1145 (9th Cir.

16  2021) (quoting *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)).

17  Claims that sound in fraud are subject to the heightened pleading standard of Federal Rule

18  of Civil Procedure 9(b).  Rule 9(b) requires a party alleging fraud to "state with particularity the

19  circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b), a fraud claim must

20  be accompanied by "the who, what, when, where, and how" of the misconduct.  *Nemykina v. Old*

21  *Navy, LLC*, 461 F. Supp. 3d 1054, 1059 (W.D. Wash. 2020).  It is not necessary for a plaintiff to

22  specifically label a cause of action as "fraud"; claims that are "grounded in fraud" or that "sound

23  in fraud" still must satisfy the Rule 9(b) requirements.  *Fid. Mortg. Corp. v. Seattle Times Co.*, 213

24  F.R.D. 573, 575 (W.D. Wash. 2003).  Any claim that is predicated on a "unified course of

25  fraudulent conduct" is, by definition, "grounded in fraud."  *See, e.g.*, *Nemykina*, 461 F. Supp. 3d

26  at 1058 ("While not all claims brought under the Washington CPA must be pled with the specificity

27  prescribed by Rule 9(b), CPA claims that allege and depend upon a 'unified course of fraudulent

28  conduct' as the basis of the claims 'sound in fraud,' and must be averred with particularity.").

Plaintiffs' theories fail to state a claim, whether or not the heightened Rule 9(b) standard applies, and should be dismissed.

## I.   THE PRODUCTS ARE NOT "GIFT CARDS" AND AMAZON PROPERLY COLLECTED TAX ON THEIR SALES.

Massachusetts and New York law required Amazon to collect sales tax for the applicable transactions.[7]  *See* Mass. Gen. Laws ch. 64H, § 3; N.Y. Tax Law § 1131.  In Massachusetts, every "vendor [must] add to the sales price and … collect from the purchaser the full amount of the tax imposed … and [the] tax shall be a debt from the purchaser to the vendor …."  Mass. Gen. Laws ch. 64H, § 3.  For instance, "fees charged for subscriptions to use online software products," like the PlayStation subscription here, are subject to Massachusetts sales tax "regardless of the method of delivery" because they are "transfers of rights to use software installed on a remote server." *Citrix Sys., Inc. v. Comm'r of Revenue*, 139 N.E.3d 293, 294, 298-99(Mass. 2020).  Likewise, in New York, "every person required to collect the tax shall collect the tax from the customer when collecting the price … to which it applies[,]" and "[t]he tax shall be paid to the person required to collect it as trustee for and on account of the state."  N.Y. Tax Law § 1132; *see also* N.Y. Tax Law § 1131 ("persons required to collect tax" include "every vendor of tangible personal property or services.").  Amazon's failure to perform its mandated tax collections duties would expose it to potential liability and penalties.  *See, e.g.*, N.Y. Tax Law §§ 1145, 1817.

Despite these clear authorities, Plaintiffs allege that the products at issue are exempt from sales tax because they are "gift cards" or "gift certificates" under the Electronic Fund Transfer Act ("EFTA") and Section 396-i of New York's General Business Law.  *See* SAC ¶¶ 10-12 (pp. 3-4). Plaintiffs' reliance on these statutes is misplaced for at least two reasons.  <u>First</u>, neither statute is a tax law and the definitions in those statutes have no bearing on whether sales tax is due on any transaction.   The EFTA requires certain disclosure for, and prohibits expiration dates and

---

[7]  The Products were not Washington transactions subject to Washington sales or use taxes.  Nonetheless, Amazon is also required to collect sales tax under Washington law.  *See* RCW § 82.08.020; RCW § 82.08.050(1)-(2) ("Each seller must collect from the buyer the full amount of the tax payable in respect to each taxable sale"; tax "collected by the seller [] is deemed to be held in trust by the seller until paid to the department."); *see also* RCW § 82.04.257; WAC 458-20-15503, Parts 2-3.

extraneous fees and charges on, gift cards and gift certificates.  *See* 12 C.F.R. § 1005.20(c)-(f).  New York's Section 396 similarly sets forth disclosure requirements for the terms and conditions of gift certificates.  *See* N.Y. Gen. Bus. Law § 396-i(3).  Plaintiffs cite no authority, and Amazon is not aware of any, to indicate that the relevant state tax laws reference or borrow from the definitions in these unrelated statutes.  Second, even if those statutes were relevant here, the Products are not "gift cards" under either law.  Both the EFTA and New York's statute define a "gift card" or "gift certificate," in part, as a device that is issued "in a specified amount."  *See* 12 C.F.R. § 1005.20(a); N.Y. Gen. Bus. Law § 396-i(1).  Plaintiffs allege that the "Robux gift card" meets the definition of gift card because it is issued in a "specified amount of *'virtual currency'*."  SAC ¶ 10 (p. 3) (emphasis added).  With respect to the PlayStation subscription, they ignore the "specified amount" requirement entirely, and simply allege, in conclusory terms, that it is "a gift card in the practical sense."  *Id.* ¶ 26 (p. 9).

Neither "Robux gift cards" nor the PlayStation subscription are issued in a "specified amount" under the EFTA or New York General Business Law, both of which require that a gift card be issued in a specified amount *of money*.  Supplemental regulations from the Federal Bureau of Consumer Financial Protection—which is tasked with issuing regulations to carry out the purposes of the EFTA; *see* 12 C.F.R. § 1005.1—provide the official interpretation of the EFTA, and directly address this issue:  "Certain cards, codes, or other devices [that] may be redeemable upon presentation for a specific good or service, or 'experience,' … generally are ***not*** subject to the requirements of this section because they are not issued to a consumer 'in a specified amount.'"  *See* 12 C.F.R., Pt. 1005, Supp. I § 1005.20(a)(3) (emphasis added).  Thus, if a card "is issued in a specified or denominated amount that can be applied toward the purchase of a specific good or service, such as a certificate or card redeemable for a spa treatment up to $50, [it] is subject to this section."  *Id.* (emphasis added).  By contrast, "if the prepaid card does not have a ***monetary value***, [it] therefore is not 'issued in a specified amount'" and "does not meet the definitions of 'gift certificate,' 'store gift card,' or 'general-use prepaid card' in § 1005.20(a)."  *Id.* § 1005.20(b)(6) (emphasis added).

The Robux product at issue might *cost* $10 to *buy*, but the card is not issued in a "specified amount" of real money redeemable in the real world, as would be true of a real gift card with a $10 cash value.  The only even theoretically redeemable amount associated with the card is "800 Robux."  *See* SAC ¶ 8 (p. 3) (screenshot of "Roblox Gift Card - 800 Robux").  But Robux are make-believe currency, redeemable only for experiences within the Roblox videogame.  Robux have no monetary value in the real world, nor can they be "applied toward the purchase" of any good or service in the real world.  Even Plaintiffs acknowledge that the Robux product "allows the customer to purchase *virtual* items *in a video game* (in this case, Roblox)."  *Id.* ¶ 10 (p. 3).  Thus, even if the EFTA had any application to the interpretation of state tax law, it would not support Plaintiffs' position.

Plaintiffs also cite the website "Investopedia" for the conclusion that a Robux card meets "the very definition of a gift card."  *Id.*  Not only does Investopedia have no legal authority whatsoever, but even *it* defines a gift card as one that "'contains a specific amount of ***money*** available for use ***for a variety of purchases***.'"  *Id*. (emphases added).  A Robux card does not "contain" *any* amount of money, and it is not useful "for a variety of purchases."  It is a code that is useful only for acquisition of pretend game-related items within the video game Roblox.

A June 2015 advisory opinion from the New York State Department of Taxation and Finance ("NYSDTF") cements the conclusion that neither Product is a gift card for tax purposes.  *See* Petition No. S100920A, NYSDTF Office of Counsel Advisory Opinion Unit (2015), 2015 N.Y. Tax Lexis 38, available at https://www.tax.ny.gov/pdf/advisory_opinions/sales/a15_25s.pdf ("NYSDTF Advisory Opinion").  There, the petitioner sought guidance from the NYSDTF regarding whether certain videogame software is subject to sales tax, in particular:  (1) "Subscription Cards" that "allow the customer to access online gaming networks for a specified period of time for game play"; (2) "Point Cards" that "contain point values that are used to access aspects of the on-line gaming software"; and (3) "Dollar Value Cards" that contain "a specific face value dollar amount (such as for $20.00)."  *Id.* at *3-4.  The NYSDTF determined that Subscription and Points Cards "are subject to sales tax" under New York Tax Law, but Dollar Value Cards are not.  *Id*. at *8-9.  A "Dollar Value Card" is a "gift certificate that may be used in full or part

payment, up to the stated **dollar value**, for the purchase **of unspecified goods and services** at some future date." *Id*. (emphases added).  Sale of the card itself is generally not taxable because the "taxable sale occurs when the certificate is presented in exchange for the purchase of taxable property or services."  *Id*.  There is no such secondary, taxable transaction associated with Subscription and Point Cards, which are not denominated in dollars and have limited use.  Through redemption codes or points, they "entitle the user to access a specific gaming network for a specified amount of time for the express purpose of accessing the pre-written gaming software offered by that network."  *Id.* at *8.  Accordingly, the sale of Subscription and Point Cards *is* the taxable event.

The Robux product and the PlayStation subscription fall squarely within the definition of Subscription and Point Cards from the advisory opinion.  Robux cards "contain a redemption code or points" for use within the Roblox game.  *See* NYSDTF Advisory Opinion at *8.  And, like the Subscription Card in the opinion, PlayStation subscriptions do no more than "entitle the user to access [the PlayStation library] for a specified amount of time."  *Id.*  The sale of these Products also does not give rise to any subsequently taxable transactions.  Transactions *within the Roblox game made using Robux* are certainly not subject to real world taxes, and PlayStation memberships do not involve the redemption of even play money or virtual currency.

Because the Products are not gift cards in any sense, and certainly not for purposes of sales tax exemptions, Plaintiffs cannot state any viable claim that is premised on the Products *being* gift cards, which eliminates Plaintiffs' consumer protection claims.

## II.    PLAINTIFFS' MASSACHUSETTS LAW CLAIM FAILS REGARDLESS OF WHETHER THE PRODUCTS WERE NOT TAXABLE.

Massachusetts law declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices **in the conduct of any trade or commerce**."  Mass. Gen. Laws ch. 93A, § 2 (emphasis added).  Plaintiffs allege that Amazon violated Gen. Laws ch. 93A (Count III) by "over-charg[ing] its subscribers a false and unlawful sales tax on their purchases of digital and gift card items[,]" despite representing that Amazon does not collect tax on such items.  SAC ¶¶ 38 (p. 13), 72-77 (pp. 26-27).  Even accepting Plaintiffs' allegations, they fail to state a claim under

Gen. Laws ch. 93A because Amazon's allegedly unlawful collection of state sales tax did not occur in "trade or commerce." In addition, Massachusetts' comprehensive and exclusive administrative remedy for aggrieved taxpayers preempts Gen. Laws ch. 93A claims based on tax collection.

### A.    Amazon's Alleged Conduct Is Not "Trade or Commerce" Under Massachusetts Gen. Laws ch. 93A.

To be actionable under Gen. Laws ch. 93A, conduct must occur "in a business context." *Lantner v. Carson*, 373 N.E.2d 973, 976 (Mass. 1978). Alleged misconduct "must have an entrepreneurial, commercial, or business purpose," or "serve the actor's financial benefit or gain." *McGonagle v. Home Depot U.S.A., Inc.*, 915 N.E.2d 1083, 1088-89 (Mass. Ct. App. 2009) (citing *Darviris v. Petros*, 812 N.E.2d 1188, 1193-94 (Mass. 2004)). Where conduct is motivated by "legislative mandate," rather than business or personal reasons, Gen. Laws ch. 93A does not apply. *Feeney v. Dell, Inc.*, 908 N.E.2d 753, 770 (Mass. 2009); *see also Lafayette Place Assocs. v. Boston Redevelopment Auth.*, 694 N.E.2d 820, 836 (Mass. 1998) (where a party's actions are motivated by "legislative mandate, not business or personal reasons," this court has "repeatedly held that c. 93A does not apply."). By its own terms, the statute does not "apply to transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States." Mass. Gen. Laws ch. 93A, § 3.

Sales tax collection does not occur in "trade or commerce" because it does not have an "entrepreneurial, commercial, or business purpose." *See, e.g.*, *McGonagle*, 915 N.E.2d at 1088-89. Nor does it "serve the actor's financial benefit or gain." *Id.* Rather, collecting taxes is conduct required entirely by "legislative mandate." Mass. Gen. Laws ch. 64H, § 3 ("[E]ach vendor in the commonwealth shall add to the sales price and shall collect from the purchaser the full amount of the tax imposed … and [the] tax shall be a debt from the purchaser to the vendor …..."); *see supra*, Argument Section I. Vendors which, "on behalf of the Commonwealth, compute, collect, and file sales tax returns, and remit full sales tax for each customer transaction[,]" serve as "trustees for the Commonwealth's retail sales taxes." *Household Retail Servs., Inc. v. Comm'r of Revenue*, 859 N.E.2d 837, 840-41 (Mass. 2007).

In *Feeney*, the Massachusetts Supreme Court dismissed claims that Dell's collection of sales tax on optional service contracts violated Gen. Laws ch. 93A.  908 N.E.2d at 753.  The court held that, although Dell's *sales* occurred in a business context, Dell's collection of tax on the contracts did not.  *Id*.  Indeed, even if "Dell was not properly charging and collecting the taxes, that Dell remitted the proceeds from the tax collected to the Commonwealth—rather than retaining them for its own enrichment—compels a conclusion on the record here that Dell's collection of such tax was not motivated by 'business or personal reasons' but was pursuant to legislative mandate." *Id.* at 770-71.  Thus, Plaintiffs failed to state a claim under Gen. Laws ch. 93A.  *Id.* at 771.  Likewise, in *McGonagle*, the Massachusetts Court of Appeals dismissed a class action suit against Home Depot in part because the retailer's overcollection of sales tax on certain transactions did not occur in "trade or commerce" under Gen. Laws ch. 93A.  915 N.E.2d at 1089.  "Home Depot's conduct [fell] well outside the perimeter of," and was exempt from, Gen. Laws ch. 93A because the retailer "carried out a legal duty, and not a profit-making exercise." *Id*.

As in *Feeney* and *McGonagle*, Amazon's collection of state sales tax did not occur in "trade or commerce."  Indeed, Plaintiffs do not even allege that Amazon profited from the collected sales tax, nor do they have any good-faith basis to allege that Amazon failed to remit sales tax.  As discussed, the SAC merely speculates that Amazon "possibly" failed to remit such taxes, and only on third-party sales.  SAC ¶¶ 40-47 (pp. 13-15), 50 (p. 15).  But even if Amazon's collection of tax had been unlawful (it was not), Amazon was performing a statutory duty as a trustee of the Commonwealth, conduct that is exempt from Gen. Laws ch. 93A.  *See McGonagle*, 915 N.E.2d at 1089; Mass. Gen. Laws ch. 93A, § 3.  Accordingly, the Court should dismiss Plaintiffs' claims under Gen. Laws ch. 93A.

### B.    Massachusetts' Administrative Remedy Is Exclusive.

Plaintiffs' Gen. Laws ch. 93A claim must also be dismissed for the independent reason that Massachusetts provides an exclusive, preemptive administrative remedy for the allegedly unlawful collection of sales taxes.  *See* Mass. Gen. Laws ch. 62C, §§ 36-41; *McGonagle*, 915 N.E.2d at 1090-91.

When the Massachusetts legislature provides a comprehensive scheme for regulating certain conduct, its intent is to preclude actions under the more liberal remedies outlined in Gen. Laws ch. 93A.  *See, e.g.*, *Cabot Corp. v. Baddour*, 477 N.E.2d 399 (Mass. 1985) (Gen. Laws ch. 93A did not apply to securities transactions that are covered by the Uniform Securities Act); *Darviris*, 812 N.E.2d 1188 (2004) (Gen. Laws ch. 93A claim for negligent delivery of medical care precluded by the legislature's exhaustive statutory scheme governing medical malpractice claims); *Reiter Oldsmobile, Inc. v. General Motors Corp.*, 378 Mass. 707, 711, 393 N.E.2d 376 (1979) (holding that remedies under Gen. Laws ch. 93A are unavailable where different statute provides coherent and more specific standards and measures for business practices among motor vehicle manufacturers, distributers, and dealers); *Fleming v. National Union Fire Ins. Co.*, 445 Mass. 381, 385–86, 837 N.E.2d 1113 (2005) (comprehensive nature of the workers' compensation statutes renders  Gen. Laws ch. 93A unavailable to injured employees); *see also* Thomas B. Merrit, Preemption by another Massachusetts law, 35 Mass. Prac., Consumer Law § 4:15 (3d ed.) (updated Sept. 2021) (the Legislature's creation of a comprehensive regulatory scheme for a particular activity "preclude[s]" recourse to "the more liberal remedies present in the Consumer Protection Act but not in the specific statute").

In Massachusetts, a taxpayer "aggrieved by the assessment of a tax" may seek an abatement from the Department of Revenue "(1) within 3 years from the date of filing of the return …; (2) within 2 years from the date the tax was assessed or deemed to be assessed; or (3) within 1 year from the date that the tax was paid, whichever is later …."  Mass. Gen. Laws 62C, § 37; *see also* *McGonagle*, 915 N.E.2d at 1090.  This administrative remedy is "exclusive, ***whether or not the tax is wholly illegal***."  Mass. Gen. Laws ch. 62C, § 41 (emphasis added); *see also McGonagle*, 915 N.E.2d at 1090.  "The specific tax code provisions should preempt the general c. 93A provisions" because "the Legislature did not intend their application to the same conduct."  *See McGonagle*, 915 N.E.2d at 1091.  Accordingly, Massachusetts' exclusive administrative remedy preempts and precludes Plaintiffs' Gen. Laws ch. 93A claim.

### III. PLAINTIFFS' NEW YORK GENERAL BUSINESS LAW CLAIM FAILS REGARDLESS OF WHETHER THE PRODUCTS WERE NOT TAXABLE.

New York General Business Law ("NYGBL") Section 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in [New York]." N.Y. Gen. Bus. Law § 349(a). Under NYGBL Section 350, it is illegal to engage in false advertising that "is misleading in a material respect." N.Y. Gen. Bus. Law § 350.[8] Plaintiffs allege that Amazon violated Sections 349 and 350 (Counts IV and V) "by falsely representing that its assessment of sales tax complied with the laws of a given state, and falsely representing that it would not assess a sales tax on the purchase of a gift card." SAC ¶ 86 (p. 28). Because Sections 1139 and 1140 of the New York Tax Law provide the exclusive remedy for actions related to the alleged overcollection of sales tax, *see* N.Y. Tax Law §§ 1139-40, Plaintiffs are precluded from asserting claims under Sections 349 and 350 of the NYGBL. In addition, Section 349(d) of the NYGBL expressly exempts Amazon's alleged conduct from suit under Section 349. *See* N.Y. Gen. Bus. Law § 349(d).

#### A. New York Tax Law Preempts Plaintiffs' Claims Under the NYGBL.

Consumers in New York seeking the return of sales taxes "erroneously, ***illegally*** or unconstitutionally collected or paid … to a person required to collect tax" must apply for a refund to the NYSDTF. N.Y. Tax Law § 1139(a) (emphasis added); *see also Estler v. Dunkin' Brands, Inc.*, 691 F. App'x 3, 5 (2d Cir. 2017) (holding that state-law administrative process for sales tax refunds is mandatory). This is the "exclusive remed[y] available to any person for the review of tax liability" imposed by New York's tax statutes. N.Y. Tax Law § 1140; *see, e.g., Cohen v. Hertz Corp.*, No. 13 Civ. 1205 (LTS)(AJP), 2013 WL 9450421, at *3 (S.D.N.Y. Nov. 26, 2013). Amazon plainly is a "person required to collect tax." N.Y. Tax Law § 1139(a); *see also* N.Y. Tax Law § 1131 ("persons required to collect tax include "every vendor of tangible personal property

---

[8] New York courts use the same three-part test to determine whether a business practice violates Section 349 or 350. *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. Ct. App. 2012). A plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct, (2) that the conduct was materially misleading, and (3) that the plaintiff suffered injury because of the allegedly deceptive act or practice. *City of New York v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834, 838 (N.Y. Ct. App. 2009).

or services").  A party's failure to pursue and exhaust administrative remedies compels dismissal of a lawsuit against the "person required to collect tax" for recovery under a different legal theory. *See Holt v. Town of Stonington*, 765 F.3d 127, 130 (2d Cir. 2014) (internal quotation omitted) (property owner's failure to exhaust administrative remedies for a zoning grievance before bringing a federal lawsuit deprived the court of subject matter jurisdiction).

On these principles, New York courts uniformly hold that an aggrieved taxpayer must pursue and exhaust Section 1139's administrative relief before asserting a claim for unlawful collection of taxes under other theories, including NYGBL Sections 349 and 350.  For instance, in *Guterman v. Costco Wholesale Corp.*, 927 F. 3d 67 (2d Cir. 2019), the court dismissed a class action lawsuit in which the plaintiffs alleged that Costco violated Section 349 of the NYGBL by illegally charging sales tax in certain coupon-related transactions.  The court held that Section 1139's "application-and-refund process is the exclusive remedy available for claims of unlawfully charged sales tax." *Id.* at 69.

Likewise, in *Togut v. Forever 21, Inc.*, the plaintiff alleged that the defendants unlawfully collected sales tax on plaintiff's retail clothing purchases.  285 F. Supp. 3d 643 (S.D.N.Y. Jan. 16, 2018).  The *Togut* court granted defendants' motion to dismiss because plaintiff had not sought administrative relief under Section 1139 before asserting its claims for unjust enrichment, conversion, and money had and received.  *Id.* at 647.  As the court found, "the collection of sales taxes constitutes merely a ministerial act"; consequently, "once the merchant collects the tax, its responsibility ends[,] and a dissatisfied taxpayer's recourse is against the taxing body." *Id.* at 646 (internal quotations omitted); *see also Estler*, 691 F. App'x at 5 (dismissing class action lawsuit alleging unlawfully charged sales tax because plaintiffs failed to follow the administrative procedures in Section 1139, which are "generally mandatory when pursuing damages for erroneously imposed sales taxes"); *see also Kupferstein v. TJX Companies, Inc.*, No. 15-cv-5881 (NG), 2017 WL 590324, at *1-2 (E.D.N.Y. Feb. 13, 2017) (dismissing NYGBL Section 349 claims against retailer for "overcharges of sales tax"; the "allegation that [retailer-defendant] failed to remit the full amount she paid in taxes is speculation insufficient to support her claim"); *Gilbert v.*

*Home Depot*, No. 13-CV-853S, 2014 WL 4923107, at *3 (W.D.N.Y. Sept. 30, 2014); *Cohen,* 2013 WL 9450421, at *3; *Davidson v. Rochester Tel. Corp.*, 558 N.Y.S.2d 1009 (3d Dep't 1990).

If, as in *Togut* and *Kupferstein*, courts dismiss lawsuits even where the plaintiff properly alleges non-remittance, then there is no hope for Plaintiffs, who make no such affirmative allegation. Plaintiffs' speculative allegation that Amazon "possibly" remitted taxes to third-party sellers instead of to the relevant state authorities (SAC ¶¶ 40 (p. 13), 50 (p. 15)) fails to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 557; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully"). Even under Rule 8's more lenient notice pleading standard, Plaintiffs must still give Amazon fair notice of the "grounds" upon which their claim rests. *Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a). Yet Plaintiffs do not allege even *when* Amazon might have failed to remit taxes to state authorities, speculating that the conduct might have occurred "for at least part of the class period." SAC ¶¶ 40 (p. 13), 50 (p. 15). Compounding that vagueness, Plaintiffs never define the class period. *See generally* SAC. Thus, Plaintiffs' claims do not satisfy the plausibility standard under Rule 8, let alone under Rule 9's heightened pleading standard, which applies because Plaintiffs' claims sound in fraud. SAC ¶¶ 39 (p. 13), 47 (p. 15), 51 (p. 16) (alleging "fraudulent overcharging practices" on "a standard and uniform basis"); *see Nemykina*, 461 F. Supp. 3d at 1058 (claims that allege a "unified course of fraudulent conduct" sound in fraud); *Fid. Mortg. Corp.*, 213 F.R.D. at 575.

Here, Plaintiffs incorrectly allege that Amazon "unlawfully" collected sales tax on certain products. SAC ¶ 46 (pp. 14-15). Even if that were true (it is not), the Court should dismiss Plaintiffs' NYGBL claims (Counts IV and V) because, as in *Guterman*, *Togut*, and other cases, Plaintiffs did not exhaust their exclusive administrative remedies before the New York Tax Commission. *See, e.g.*, *Guterman*, 927 F.3d at 70; *see also Holt*, 765 F.3d at 130.

### B.   Amazon's Conduct Is Exempt Under Section 349 of the NYGBL.

Section 349 exempts any acts or practices that are "subject to and compl[y] with the rules and regulations of … any official department, division, commission or agency of the United

1   States," taking into account how such rules and regulations are interpreted by "such department,

2   division, commission or agency or the federal courts."  N.Y. Gen. Bus. Law § 349(d).  This

3   provision—which is consistent with the preemptive effect of Sections 1139 and 1140 of the New

4   York Tax Law—provides an independent ground for dismissing Plaintiffs' Section 349 claims.

5   Amazon's alleged conduct falls directly within Section 349's exemption.  The collection

6   and remittance of sales tax constitutes a mere "ministerial act."  *See supra*, Argument Section

7   III.A; *see also Kupferstein*, 2017 WL 590324, at *2.  Amazon was "designated by law to collect

8   the taxes and as such it ha[d] no right to question the underlying validity of the tax."  *Davidson*,

9   558 N.Y.S.2d at 1011 (citing *Tuthill v. Allmendinger*, 414 N.Y.S.2d 181 (1979)).  In fact, Amazon

10  could be exposed to potential liability and penalties if it *failed* to collect sales tax.  *See supra*,

11  Argument Section I; *see also* N.Y. Tax Law §§ 1145, 1817; *Davidson*, 558 N.Y.S.2d at 1011.

12  Amazon was thus acting "subject to and [in] compl[iance] with the rules and regulations of" New

13  York State's Department of Taxation and Finance.  N.Y. Gen. Bus. Law § 349(d).

14  **IV.   PLAINTIFFS' WASHINGTON CPA CLAIM FAILS.**

15  To state a claim under the Washington Consumer Protection Act (WCPA), a plaintiff must

16  establish (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) public

17  interest impact, (4) injury to Plaintiffs' business or property, and (5) causation.  *Hangman Ridge*

18  *Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).  If any

19  element is missing, the claim fails.  *See Robinson v. Avis Rent A Car Sys., Inc.*, 106 Wn. App. 104,

20  114, 22 P.3d 818 (2001).  Plaintiffs' WCPA claim (Count II) relies on the same allegations

21  underlying their Massachusetts and New York unlawful tax collection claims.

22  SAC ¶¶ 53- 66 (pp. 23-25).  Because Amazon's alleged conduct did not "occur[] in trade or

23  commerce" under clear Washington law, Plaintiffs fail to state a claim under the WCPA, even if

24  their factual allegations were true.  Additionally, Amazon's collection of sales tax falls squarely

25  within WCPA's safe harbor exemption for activities expressly permitted by a regulatory body.  *See*

26  RCW § 19.86.170.

27

28

### A.    Amazon's Alleged Conduct Did Not Occur in "Trade or Commerce."

The WCPA defines "trade or commerce" as "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington."   RCW § 19.86.010(2).   Courts interpret this provision to encompass only the "entrepreneurial or commercial aspects" of a business.  *See Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 169 744 P.2d 1032 (1987).  Only conduct directed at "increasing business or profit" is subject to the WCPA.  *Stiegler v. Saldat*, No. C14-1309 TSZ, 2015 U.S. Dist. LEXIS 193516, at *12 (W.D. Wash. Oct. 23, 2015), *aff'd*, 707 F. App'x 478 (9th Cir. 2017).

*Browne v. Avvo, Inc.*, 525 F. Supp. 2d 1249 (W.D. Wash. 2007), addresses the type of conduct that does *not* constitute "trade or commerce" under the WCPA.  In *Browne*, plaintiffs alleged that Avvo's website violated the WCPA by providing misleading attorney ratings.  *Id*. at 1254.   The court dismissed the claim under Rule 12(b)(6) because plaintiffs failed sufficiently to allege that Avvo's attorney rating program satisfied the "trade or commerce" prong of the WCPA test.  *Id*.  In fact, Avvo's "advertising program [was] separate and distinct from" its attorney rating program and Avvo did not accept payment to include attorneys on its website.  It gathered that data from publicly accessible databases, and attorneys and consumers did not pay to access the site.  *Id*.  Thus, Avvo's attorney ratings program was not "trade or commerce."  *Id*.

Plaintiffs allege that "Defendant's deceptive acts and practices have occurred in trade or commerce because they 'include the sale of assets or services.'"  SAC ¶ 59 (p. 24) (emphasis added).  Amazon's *sales* of the allegedly non-taxable items might be commercial conduct, but its collection of tax on those items is not.  As discussed above, it is a purely ministerial act required by law.  *See, e.g.*, Mass. Gen. Laws ch. 64H, § 3; N.Y. Tax Law §§ 1145, 1817.  Because the intended and ultimate destination for the collected sales tax is the government, Amazon does not "increase[e] business or profit" from its tax collection.  *See Stiegler*, 2015 U.S. Dist. LEXIS 193516, at *12.  If anything, the line between sales (commercial conduct) and the collection of taxes (non-remunerative, mandated ministerial conduct) is even more starkly defined than in *Browne*.  There, the court drew a distinction between a website's provision of free attorney ratings (non-commercial) and paid attorney advertising (commercial).  Even the existence of *some*

1   commercial conduct did not render tangential conduct commercial, even though attorney ratings

2   were a core part of Avvo's business. *See Browne*, 525 F. Supp. 2d at 1254.  Here, collecting and

3   providing taxes is a purely non-commercial, ministerial act that provides Amazon with no

4   commercial benefit.

5          Plaintiffs' WCPA claim fails as a matter of law and should be dismissed.

6      **B.    Amazon's Alleged Conduct Is Exempt from Suit Under the WCPA.**

7          "[A]ctions or transactions permitted by any [] regulatory body or officer acting under

8   statutory authority of this state or the United States" are generally exempt under the WCPA.  *See*

9   RCW § 19.86.170.  This exemption applies if the allegedly unfair or deceptive act "is specifically

10  permitted, prohibited, or regulated" but not if it is merely "regulated generally."  *Miller v. United*

11  *States Bank, N.A.*, 72 Wn. App. 416, 420, 865 P.2d 536 (1994).  Heavily regulated activities are

12  not subject to the WCPA.  For instance, in *McCarthy Fin., Inc. v. Premera*, 182 Wn.2d 936, 941-

13  42, 347 P.3d 872 (2015), the Washington Supreme Court dismissed WCPA claims for alleged

14  "unfair and deceptive overcharges for health insurance," holding that, because health insurance

15  premiums in Washington are approved by the state government, plaintiffs' claims "would

16  necessarily require courts to reevaluate agency-approved rates and therefore may not be considered

17  by courts."  *See also Miller*, 72 Wn. App. at 422 (affirming dismissal of WCPA claims against a

18  bank for lending practices because "the issues fall within the scope of a pervasive regulatory

19  scheme and a danger exists that judicial action could conflict with that regulatory scheme").

20         Here, Plaintiffs' claims would necessarily require the Court to reevaluate New York's and

21  Massachusetts' extensive tax statutes and regulations, which the Court may not do in the context

22  of a WCPA action.  *See McCarthy Fin.*, 182 Wn.2d at 941-42.  Accordingly, the Court should

23  dismiss the WCPA claim.

24  **V.    PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT.**

25         The Court should dismiss Plaintiffs' breach of contract claim (Count I) because the contract

26  that Plaintiffs identify—the COUs and the incorporated Help pages—unambiguously allows the

27  very conduct that Plaintiffs challenge.  As described in the Background Section above, Amazon's

28  Help pages expressly disclosed to Plaintiffs that certain "electronically delivered products,

services, and subscriptions … may be subject to state and local jurisdiction tax." And the Help pages went further and specifically identified "digital gaming," "in-game currency," and "gaming subscriptions" as "examples of digital items that may be subject to tax." Those are exactly the types of products Plaintiffs purchased, *i.e.*, the Roblox in-game currency and the PlayStation Plus gaming subscription.

Courts routinely hold that a plaintiff cannot assert breach of contract for conduct that is expressly *permitted* by the contract. *See, e.g.*, *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 58 F. Supp. 3d 1166, 1171 (W.D. Wash. 2014) (dismissing breach of contract claim alleging that Amazon unlawfully withheld payments from the plaintiff because the "plain language" of the contract unambiguously allowed Amazon to delay remitting payments); *see also Raby v. Onsrud Cutter, LP*, No. C09-0863JLR, 2009 WL 5170187, at *4 (W.D. Wash. Dec. 17, 2009) (employer did not breach employment contract by terminating salesperson because the plain language of the agreement unambiguously established that the employer was entitled to terminate the salesperson's employment at any time); *Blakey v. Blakey*, 186 Wn. App. 1037, 2015 WL 1467261, at *9 (2015) (dismissing breach of contract claim because the contract terms "expressly contemplated" defendant's conduct); *Petersen v. Baseline Eng'g., Inc.*, 176 Wn. App. 1017, 2013 WL 4774448, at *5 (2013) (dismissing breach of contract claim because the "plain language" of the contract contradicted plaintiff's allegations).

Plaintiffs' contract with Amazon expressly and unambiguously permits Amazon to collect sales tax on products when and as required by state law. That is what Amazon did, and Plaintiffs now try to cast that conduct as a breach of the contract. The law does not allow that. *Hard 2 Find*, 58 F. Supp. 3d at 1171. Plaintiffs' breach of contract claim should also be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that the Court dismiss the SAC in its entirety and with prejudice.

Dated: February 7, 2022   Respectfully submitted,
             FENWICK & WEST LLP

             By: */s/ Brian D. Buckley*
               Brian D. Buckley, WSBA No. 26423

1

2

3

FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA  98101
Telephone:  206.389.4510
Facsimile:   206.389.4511

4

Adam Gahtan (admitted *pro hac vice*)

5

6

7

FENWICK & WEST LLP
902 Broadway, 14th Floor
New York, NY 10010
Telephone:  212.430.2600
Email: agahtan@fenwick.com

8

Jedediah Wakefield (admitted *pro hac vice*)

9

10

11

FENWICK & WEST LLP
555 California St, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300
Email:  jwakefield@fenwick.com

12

*Attorneys for Amazon.com Services LLC*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

DEBBIE CHAVES, DANIELLE WARD, and
AMANDA EVANS, on behalf of themselves
and all others similarly situated,

Plaintiffs,

v.

AMAZON.COM SERVICES LLC,

Defendant.

Case No.: 2:21-cv-01213-TL

**CERTIFICATION OF CONFERENCE**

16

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to Section II(I) of the Honorable Judge Lin's January 25, 2022 Standing Order for All Civil Cases, I hereby certify that, on January 26, 2022, as counsel for the moving party, I conferred with opposing counsel in a good-faith effort to resolve the issues raised in this motion. The parties were unable to resolve the issues raised in the motion

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: February 7, 2022

*/s/ Brian D. Buckley*
Brian D. Buckley, WSBA No. 26423