1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| DEBBIE CHAVES, DANIELLE WARD, and AMANDA EVANS, individually and on behalf of all others similarly situated,<br><br>                   Plaintiffs,<br><br>       v.<br><br>AMAZON.COM SERVICES LLC,<br><br>                 Defendant. | Case No. 2:21-cv-01213-TL<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT** |

# <u>TABLE OF CONTENTS</u>

**PAGE(S)**

I.      INTRODUCTION ...................................................................................................... 1

II.     ARGUMENT ............................................................................................................ 2

     A.    The Products Are "Gift Cards" Or "Digital Products," Which Are
          Tax Exempt In Massachusetts And New York ................................................ 2

          1.    The Products Are Tax Exempt In Massachusetts ........................................ 9

          2.    The Products Are Tax Exempt In New York .............................................. 11

     B.    Plaintiffs State A Claim For Breach of Contract ......................................... 14

     C.    Plaintiffs Sufficiently Allege Violations Of Massachusetts,  New
          York, And Washington's Consumer Protection Acts ................................... 15

          1.    Plaintiffs State A Claim For Violations of The Massachusetts
               Unfair and Deceptive Business  Practices Act ............................................ 15

          2.    Plaintiffs State A Claim For Violations of New York General
               Business Law ............................................................................................ 17

          3.    Plaintiffs Properly Allege Claims Under The Washington
               Consumer Protection Act .......................................................................... 22

III.    CONCLUSION ........................................................................................................ 24

1

## <u>TABLE OF AUTHORITIES</u>

2

**PAGE(S)**

3

**CASES**

*Am. Cablevision of Rochester, Inc. v. Jacobs*,
    474 N.Y.S.2d 653 (N.Y. App. Div. 1984) ........................................................ 11

*American Oil Serv. v. Hope Oil Co.*,
    194 Cal. App. 2d 581 (Cal. App. Ct. 1961) ................................................... 15

*Beauchesne v. New England Neurological Associates, P.C.*,
    159 N.E.3d 728 (Mass. App. Ct. 2020) .......................................................... 16

*Browne v. Avvo, Inc.*,
    525 F. Supp. 2d 1249 (W.D. Wash. 2007) ..................................................... 22

*Citrix Sys., Inc. v. Comm'r of Revenue*,
    139 N.E.3d 293 (Mass. 2020) ......................................................................... 10

*Cohen v. Hertz Corp.*,
    2013 WL 9450421 (S.D.N.Y. Nov. 26, 2013) ............................................... 21

*Columbia Chiropractic Group, Inc. v. Trust Ins. Co.*,
    712 N.E.2d 93 (Mass. 1999) ........................................................................... 16

*Davidson v. Rochester Tel. Corp.*,
    558 N.Y.S.2d 1009 (N.Y. App. Div. 1990) .................................................... 19

*Estler v. Dunkin' Brands, Inc.*,
    691 F. App'x 3 (2d Cir. 2017) ........................................................................ 19

*Feeney v. Dell Inc.*,
    908 N.E.2d 753 (Mass. 2009) ......................................................................... 15

*Gadda v. State Bar of Cal.*,
    511 F.3d 933 (9th Cir. 2007) ................................................................. 2, 12, 13

*Gilbert v. Home Depot, Inc.*,
    2014 WL 4923107 (W.D.N.Y. Sept. 30, 2014) .............................................. 20

*Guterman v. Costco Wholesale Corp*,
    927 F.3d 67 (2d Cir. 2019) ............................................................................. 20

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
    105 Wash. 2d 778, 719 P.2d 531 (1986) ........................................................ 22

*Hershenow v. Enterprise Rent-A-Car Co. of Boston*,
 840 N.E.2d 526 (Mass. 2006) ................................................................. 16

*Holt v. Town of Stonington*,
 765 F.3d 127 (2d Cir. 2014) ................................................................. 21

*Kolebuck-Utz v. Whitepages Inc.*,
 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021) ..................................... 18

*Kupferstein v. TJX Cos.*,
 2017 WL 590324 (E.D.N.Y. Feb. 14, 2017) ........................................... 20

*Manchanda v. Navient Student Loans*,
 2020 WL 5802238 (S.D.N.Y. Sept. 29, 2020) ........................................ 18

*McCarthy Fin., Inc. v. Premera*,
 182 Wash. 2d 936 (2015) ................................................................. 23, 24

*McGonagle v. Home Depot, U.S.A., Inc.*,
 915 N.E.2d 1083 (2009) ...................................................................... 16

*Means v. City of Chicago*,
 535 F. Supp. 455 (N.D. Ill. 1982) ......................................................... 18

*Pelman ex rel. Pelman v. McDonald's Corp.*,
 396 F.3d 508 (2d Cir. 2005) ................................................................ 18

*Porsch v. LLR, Inc.*,
 380 F. Supp. 3d 418 (S.D.N.Y. 2019) ............................................ passim

*Roney v. Miller*,
 705 F. App'x 670 (9th Cir. 2017) ......................................................... 24

*Short v. Demopolis*,
 103 Wash. 2d 52, 691 P.2d 163 (1984) (en banc ................................. 22

*Stephens v. Omni Ins. Co.*,
 138 Wash. App. 151, 159 P.3d 10 (2007) ............................................. 22

*Tides v. The Boeing Co.*,
 644 F.3d 809 (9th Cir. 2011) ................................................................. 6

*Togut v. Forever 21, Inc.*,
 285 F. Supp. 3d 643 (S.D.N.Y. 2018) ................................................... 20

*United States v. Ritchie*,
 342 F.3d 903 (9th Cir. 2003) ................................................................. 5

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SAC
CASE NO. 2:21-CV-01213-TL

BURSOR & FISHER, P.A.
1990 NORTH CALIFORNIA BLVD., SUITE 940
WALNUT CREEK, CA 94596

-iii-

*Van v. LLR, Inc.*,
  500 F. Supp. 3d 927 (D. Alaska 2020) ........................................................... 17, 20, 21

**STATUTES**

Mass. Gen. Laws ch. Ann. 62C, § 41 ........................................................................ 16

Mass. Gen. Laws ch. Ann. 64H, § 1 ........................................................................... 9

Mass. Gen. Laws ch. Ann. 64H, § 2 ........................................................................... 9

Mass. Gen. Laws ch. Ann. 255D, § 1 ...................................................................... 3, 4

N.Y. Gen. Bus. Law § 396-i(1) ................................................................................... 3

N.Y. Tax Law § 1101 ................................................................................................ 12

N.Y. Tax Law § 1105 .......................................................................................... 11, 13

N.Y. Tax Law § 1139 .......................................................................................... 18, 19

N.Y. Tax Law §1140 ........................................................................................... 18, 19

Wash. Rev. Code Ann. 19.86.010(2) .................................................................... 22, 23

Wash. Rev. Code Ann.  § 19.86.170 ......................................................................... 23

**RULES**

Fed. R. Civ. P. 9(b) ............................................................................................. 17, 18

**REGULATIONS**

12 C.F.R. § 1005.20(a) ....................................................................................... 3, 6, 7

**OTHER AUTHORITIES**

Massachusetts Department of Revenue ("DOR"),
  Letter Ruling 81-4 (Jan. 5, 1981) ............................................................................. 9

Massachusetts Department of Revenue ("DOR"),
  Letter Ruling 12-8 (Nov. 8, 2013) ....................................................................... 8, 10

Massachusetts Department of Revenue ("DOR"),
  Letter Ruling 16-1 (Jan. 8, 2016) ............................................................................. 9

Massachusetts Department of Revenue ("DOR"),
  Letter Ruling 11-3 (Feb. 14, 2018) ........................................................................ 10

*Taxation of Digital Goods & Servs.*,
   70 N.Y.U. Ann. Surv. Am. L. 421 (2015) ............................................................................ 11, 12

Plaintiffs Debbie Chaves, Danielle Ward, and Amanda Evans ("Plaintiffs") respectfully submit this Opposition to Defendant Amazon.com Services LLC's ("Amazon" or "Defendant") Motion to Dismiss the Second Amended Complaint (ECF No. 27) (the "Motion" or "MTD").

## I.       INTRODUCTION

Under most state schemes, including those of Massachusetts and New York, gift cards and digital products are exempt from sales tax.  Amazon sells the "Roblox Gift Card – 800 Robux [Includes Exclusive Virtual Item] [Online Game Code]" (the "Robux Gift Card"), and the "PlayStation Plus: 1 Month Membership [Digital Code Code]" (the "PSP+ Card") (collectively, the "Products") in the states of Massachusetts and New York.  Second Amended Complaint (ECF No. 25) ("SAC"), at ¶¶ 7, 14, 18, 22, 24 28 (pp. 2:12-14, 5:9-14, 7:17-22, 8:6-7, 11:1-6).  The Products were "digital products," and the Robux Gift Card was just that—a "gift card."  SAC ¶¶ 8 (screenshot) (p. 3:1-9), 10-12 (p. 3:13-4:17), 26 (p. 9:1-8); *see also* Argument § II.A, *infra*.  Accordingly, no sales tax should have been assessed on the purchase of the Products in either Massachusetts or New York. Argument §§ II.A.1-2, *infra*.  Indeed, Defendant represented that any charges of sales tax would comply "with applicable state and local laws," and that "[n]o tax is charged when purchasing gift cards."  SAC ¶¶ 5 (p. 2:3-4), 31 (p. 11:13-16).  Nonetheless, Amazon improperly levied a "sales tax" on Plaintiffs' purchases of the Products.  *Id.* ¶¶ 13 (p. 4:18-22), 21 (p. 7:3-7), 27 (p. 9:9-11).  Notably, Amazon is the only retailer that charges a sales tax on the Robux Gift Card and does not charge a sales tax on identical gift cards for other video games.  *Id.* ¶¶ 34-36 (pp. 12:10-13:6); Declaration of Max S. Roberts ("Roberts Decl."), at Exs. 1-3.  And, Plaintiffs allege that Amazon failed to remit the improperly charged tax to state authorities.  *Id.* ¶¶ 40-46 (pp. 13:21-15:2).  Plaintiffs and the putative Class should not have to pay for Amazon's mistakes.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SAC
CASE NO. 2:21-CV-01213-TL

BURSOR & FISHER, P.A.
1990 NORTH CALIFORNIA BLVD., SUITE 940
WALNUT CREEK, CA 94596

1       For the following reasons, Amazon's conduct constitutes a breach of contract and a

2   violation of Massachusetts, New York, and Washington's consumer protection laws, and each

3   argument in Defendant's Motion is meritless.

4   **II.     ARGUMENT**

5       **A.     The Products Are "Gift Cards" Or "Digital Products," Which Are**
            **Tax Exempt In Massachusetts And New York**

6       Defendant argues that Plaintiffs' claims must be dismissed because "applicable law is clear

7   that the items [Plaintiffs] identify—digital codes to access and subscribe to videogame software—

8   were not exempt from sales tax." MTD at 1:9-11. This is wrong. As an initial matter, Defendant

9   only claims the "gift card" exemption does not apply, and only cites authority from New York.

10   In doing so, Defendant ignores that Plaintiffs also allege that the Products are exempt as virtual

11   goods and fails to address Massachusetts tax law at all. SAC ¶¶ 5, 8, 16, 19 (pp. 2:3-4, 15:17,

12   5:16-21, 19:10-16). Defendant may not assert these additional arguments on reply. *Gadda v.*

13   *State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007) ("It is well established that issues cannot

14   be raised for the first time in a reply brief."). Notwithstanding this waiver, Plaintiffs address

15   below why the Products are exempt as both "gift cards" and "digital products."

16   **Robux Gift Card**

17       Amazon's argument boils down to claiming the Robux Gift Card is not a "gift card." MTD

18   3:3-4 ("While Roblox chose to call them 'gift cards,' the Robux products at issue plainly are not

19   gift cards for sales tax purposes) (emphasis removed).[1] This argument is as silly as it sounds and

20   is belied both by federal and state regulations and a common understanding of the term.

---

[1] Notably, Defendant claims the Robux Gift Cards were sold "directly [by] Amazon, not from third-party sellers." MTD at 5:6-7 (emphasis removed). So, if Amazon is correct, then *Amazon itself* chose to call the Robux Gift Card a gift card.

As an initial matter, Amazon cites no authority for the proposition that a company's description of an item is not dispositive for tax purposes.  Nor can they, because the Robux Gift Card *is* a gift card as the term is defined in relevant statutes and regulations.  For example, 12 C.F.R. § 1005.20(a)(1) defines a "gift certificate" as "a card, code, or other device that is: (i) [i]ssued on a prepaid basis primarily for personal, family, or household purposes to a consumer in a specified amount that may not be increased or reloaded in exchange for payment; and (ii) [r]edeemable upon presentation at a single merchant or an affiliated group of merchants for goods or services."  Similarly, 12 C.F.R. § 1005.20(a)(2) defines a "store gift card" as "a card, code, or other device that is: (i) [i]ssued on a prepaid basis primarily for personal, family, or household purposes to a consumer in a specified amount, whether or not that amount may be increased or reloaded, in exchange for payment; and (ii) [r]edeemable upon presentation at a single merchant or an affiliated group of merchants for goods or services."

State regulations are in accord.  New York's General Business Law ("GBL") § 396-i(1) defines a "gift certificate" as an:

> electronic payment device that: (i) is usable at a single merchant or an affiliated group of merchants … and (ii) is issued in a specified amount; and (iii) may or may not be increased in value or reloaded; and (iv) is purchased and/or loaded on a prepaid basis for the future purchase or delivery of any goods or services; and (v) is honored upon presentation.

GBL § 396-i(1).  And Massachusetts' Gen. Laws ch. 255D, § 1 defines a "gift certificate" as:

> a writing identified as a gift certificate purchased by a buyer for use by a person other than the buyer not redeemable in cash and usable in its face amount in lieu of cash in exchange for goods or services supplied by the seller. A gift certificate shall include an electronic card with a banked dollar value … and any other medium that evidences the giving of consideration in exchange for the right to redeem the certificate, electronic card or other medium for goods, food, services, credit or money of at least an equal value.

Mass. Gen. Laws ch. 255D, § 1.  The Robux Gift Card fits neatly under each of these regulations, as it is called a gift card, is issued in a specified amount of money ($10), and is redeemable for "goods or services" in the form of virtual currency.

Numerous reputable dictionaries are in accord with this common sense understood of a gift card, defining a "gift card" as "a card entitling the recipient to receive goods or services of a specified value from the issuer,"[2] "a card of a certain value that allows you to choose an item or items of that value at that store or chain,"[3] and "a card that can be exchanged in a store or on a website for goods or services of the value that is printed on it."[4]  The Robux Gift Card fits each of these definitions.  It is issued in a specified amount of money ($10) and is redeemable for goods of specified value (800 Robux-worth of virtual items).  SAC ¶ 8 (pp. 2:15-3:9) (screenshot showing $10 on Robux Gift Card).  The term "Online Game Code" refers to the fact that the gift card comes in the form of a code that allows its value to be redeemed in the Roblox online store, as opposed to swiping the card at a checkout counter as one would do with a physical gift card.  SAC ¶ 10 (p. 3:14-16) ("A customer who purchases the Robux Gift Card is provided a unique code via email that, when inputted into the Roblox (or relevant) store, provides purchasing power in that store.").  Amazon is well aware of this, as its gift cards work the exact same way.[5]

---

[2] GIFT CARD, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/gift%20card.

[3] GIFT CARD, COLLINS DICTIONARY, https://www.collinsdictionary.com/us/dictionary/english/gift-card.

[4] GIFT CARD, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/gift-card.

[5] AMAZON.COM EGIFT CARD, https://www.amazon.com/gp/product/B09KXT1HLH/ (Q: How are email gift cards redeemed? A: … "[R]ecipients can copy their claim code and paste it into the text field on the Redeem a gift card page.").

Perhaps most notably, Plaintiffs' understanding of a gift card comports not only with how other retailers understand the term (SAC ¶ 32 (p. 11:18-19)), but how *Amazon itself* interprets the term in other instances (SAC ¶ 34 (p. 12:10-11)).  As to the former, according to the Roblox website, there are four retailers that sell virtual Robux Gift Cards: Amazon, GameStop, Walmart, and Target.[6]  Of these retailers. Amazon is the only retailer to charge tax on the Robux Gifts Card. *Compare* SAC ¶ 21 (p. 7:3-16), *with* Roberts Decl. at Exs. 1-3.  Thus, either every other retailer is wrong, or Defendant is.  And as to the latter, Amazon does not charge a sales tax on gift cards used in other video games.  For instance, Amazon also sells gift cards for the Assassin's Creed series of video games, which allow consumers to pay a specific amount of money in exchange for a code that can be redeemed for a specific amount of the virtual currency, "Helix Credits."  SAC ¶ 35 (p. 12:19-24).  "In other words, the Helix Credits are *identical* to the Robux Gift Card, save for being used for a different video game."  *Id.* ¶ 36 (p. 13:1-2) (emphasis in original).  "Yet, Amazon (correctly) does not charge a sales tax on the purchase of the Helix Credits, but (incorrectly) charges a sales tax on the purchase of the Robux Gift Card and other tax-exempt items." *Id.* (p. 13:2-4); *see also* First Amended Complaint ¶ 29 (ECF No. 13) (showing screenshot of no tax charged on the Assassin's Creed gift card in New York).[7]

---

[6] The Court may take judicial notice of the Roblox website pursuant to the "incorporation by reference doctrine."  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.") (internal citation omitted).  Plaintiffs allege that other retailers do not charge sales tax on digital products while Amazon does.  SAC ¶ 32 (p. 11:18-19)).

[7] Due to technical issues with ECF, the referenced screenshot is blurry in the filed version of the Second Amended Complaint.  Thus, Plaintiffs respectfully refer the Court to the same screenshot in the First Amended Complaint, where it appears unobscured.

Finally, even if the Robux Gift Card is not a gift card (and it is), it is also tax-exempt as a "digital product." SAC ¶¶ 15-19 (pp. 5:14-6:16). "The Robux Gift Cards are non-tangible virtual goods that are sent electronically in the form of a unique code that is generated for the buyer after the purchase." *Id.* ¶ 15 (p. 5:14-15); *see also* Argument § II.A.2, *infra*.

Defendant's arguments are unavailing. *First*, Defendant tries to discredit Plaintiffs' statutory authorities, arguing "they are not tax law[s] and the definitions in those statutes have no bearing on whether sales tax is due on any transaction." MTD at 8:22-24. But if this Court finds the term "gift card" to be ambiguous (even though the Robux Gift Card fits within the plain meaning of the term), it is well established that this court may "look to other related statutes because statutes dealing with similar subjects should be interpreted harmoniously." *Tides v. The Boeing Co.*, 644 F.3d 809, 814 (9th Cir. 2011) (internal quotations omitted).

*Second*, Defendant argues "[t]he Robux product at issue might cost $10 to buy, but the card is not issued in a 'specified amount' of real money redeemable in the real world, as would be true of a real gift card with a $10 cash value." MTD at 10:1-4 (emphasis removed). This is wrong for several reasons. The SAC clearly shows that the Robux Gift Card was issued in the "specified amount" of real money—$10. SAC ¶ 8 (p. 3:1-9) (screenshot). And the premise of Defendant's argument is at odds with Defendant's own authority:

> [I]f the card, code, or other device is issued in a specified or denominated amount that can be applied toward the purchase of a specific good or service, such as a certificate or card redeemable for a spa treatment up to $50, the card, code, or other device is [a store gift card or gift certificate] … Similarly, if the card, code, or other device states a specific monetary value, such as "a $50 value," the card, code, or other device is [a store gift card or gift certificate].

12 C.F.R., Pt. 1005, Supp. I § 1005.20(a)(3). The Robux Gift Card fits within this definition. Even if the Robux Gift Card is for "800 Robux," it still carries "a $10 value," as is written on the gift card itself. SAC ¶ 8 (p. 3:1-9) (screenshot). The Robux Gift Card is also analogous to a gift

card for "a spa treatment up to $50." A spa treatment is not a "specified amount" of money, yet it nonetheless carries value that can be quantified in a gift card. So, whether the Robux Gift Card is issued in a specified, real monetary amount of $10, or provides "a $10 value" in Robux, it is still a gift card under Amazon's own argument.[8]

*Finally*, Defendant attempts to split hairs, arguing that the Robux Gift Card "is useful only for acquisition of pretend game-related items within the video game Roblox" and thus "is not useful 'for a variety of purchases.'" MTD at 10:14-16. This argument makes no sense. Gift Cards universally and inherently limit the purchase venue, and Robux Gift Cards are no different. A restaurant gift card, for example, is useable only at the restaurant it designates, while an Amazon.com gift card, is useful "only for acquisition of" items sold on Amazon.com. It is expected that a Robux Gift Card would only allow purchases on the Roblox store, and not anywhere else. That does not make it any less of a gift card. In addition, the Robux Gift Card allows for a "variety of purchases" (*e.g.*, different items) from the Roblox store, the same way an Amazon gift card can be used for a "variety of purchases" from Amazon's website, or an iTunes gift card allows for a "variety of purchases" of music or movies from the iTunes Store. Finally, even "pretend game-related items" have value in the real word. Indeed, the Roblox community

---

[8] Defendant attempts to contrast this scenario by referencing a separate part of the regulation. MTD at 9:24-26 ("By contrast, 'if the prepaid card does not have a monetary value, [it] therefore is not issued in a specified amount and does not meet the definitions of 'gift certificate, store gift card, or general-use prepaid card in § 1005.20(a).'") (quoting 12 C.F.R., Pt. 1005, Supp. I § 1005.20(b)(6)). But the cited section only provides an exclusion for cards "redeemable solely for admission to events or venues at a particular location or group of affiliated locations generally applies to cards, codes, or other devices that are not redeemed for a specified monetary value, but rather solely for admission or entry to an event or venue." 12 C.F.R., Pt. 1005, Supp. I § 1005.20(b)(6). That section does not apply because the Robux Gift Card is not used in any way for "entry to an event or venue," and is redeemable in a "specified monetary value"—$10.

---

maintains a website where users can auction unique items for real money.[9]  Thus, a user who received a Robux Gift Card could redeem it for virtual currency, purchase a virtual item with the Robux, and then sell the item for real money.

### PSP+ Card

Like the Robux Gift Card, the PSP+ Card is a "digital good."  And although Amazon accuses Plaintiffs of "misleadingly omit[ting] the product detail page, which [] describe[s] the item" (MTD at 4:2-3), Amazon itself then ignores the details of its own exhibit.  Specifically, the "product detail page" (Buckley Decl. Ex. 1) shows that PlayStation Plus provides numerous services like "[n]ext-generation online multiplayer, "100GB cloud storage," and "exclusive discounts," and not simply "a '1-month' Membership' to a library of PlayStation video games" as Amazon claims (MTD at 4:8).  Thus, the provision of monthly free games is an incidental benefit of a PlayStation Plus membership, which offers a plethora of other, more prominent features.  And at least under Massachusetts law, services like PlayStation Plus that provide access to cloud storage and multiplayer and incidentally offer free games are not taxable.  Massachusetts Department of Revenue ("DOR") Letter Ruling 12-8 ("Generally, sales of [software-as-a-service and cloud computing] products to customers in Massachusetts are taxable … except where … the non-taxable computing resources or storage capacity services are bundled with the provision of prewritten operating system software that is incidental to the acquisition of those services, such that the object of the transaction remains the acquisition of non-taxable services.").

---

[9] https://www.playerauctions.com/roblox-marketplace/.

1   **1.    The Products Are Tax Exempt In Massachusetts**

Because the Products are "digital products" or, in the case of the Robux Gift Cards, "gift cards," they are not subject to sales tax under Massachusetts law.  As to "gift cards," the DOR has held "gift cards are the same as a gift of cash and are not subject to the 6.25% Massachusetts sales tax.  Retailers should not be charging any taxes on these items."[10]  The Massachusetts tax code "imposes an excise upon 'sales at retail of tangible personal property.'"  DOR Letter Ruling 81-4 (Jan. 5, 1981) (quoting Mass. Gen. Laws ch. 64H, § 2).  "Tangible personal property" is defined as "personal property of any nature consisting of any produce, goods, wares, merchandise and commodities whatsoever … but shall not include rights and credits, insurance policies, bills of exchange, stocks and bonds and similar evidences of indebtedness or ownership."  Mass. Gen. Laws ch. 64H, § 1.  But the sale of gift cards to consumers "is not a sale of 'tangible personal property'" and therefore not subject to sales tax.  *See* DOR Letter Ruling 81-4; *see also* DOR Letter Ruling 16-1 (Jan. 8, 2016) (holding "[c]ompany's sales tax treatment of gift cards is correct" where "[n]o sales tax is collected or remitted upon the sale of Company Certificates to customers or upon the use of Company Certificates to purchase gift cards"); DOR Directive 12-4 (July 16, 2012) ("The Department has concluded that the sale of vouchers … should be treated like gift certificates at the time of sale; thus any tax is due when the vouchers are redeemed, not when they are issued.").  Rather, when "the purchaser presents a gift certificate in lieu of cash, any sales tax due is collected at the time of sale" (*i.e.*, the tax is collected on the item actually purchased, but not on the gift card itself."  DOR Directive 12-4.  In other words, if a customer purchases an Amazon gift card and uses that gift card to buy a pair of headphones, the purchase

---

[10]  SHOPPER'S BEWARE: GIFT CARDS ARE TAX FREE, https://blog.mass.gov/revenue/taxes/shoppers-beware-gift-cards-are-tax-free/.

of the headphones would be taxed, but not the purchase of the gift card.  So too here: the Robux Gift Card is a "gift card" and therefore not subject to sales tax.[11]

As to "digital products," these too are not taxable in the state of Massachusetts.  *See* DOR Technical Information Release 05-8, at § VII.B.8 (July 14, 2005) (including "[d]igital products [] delivered electronically, including but not limited to music, video, reading materials or ring tones" under list of "[n]on-taxable and exempt services").  The only exception to the "digital products" exception is "standardized or prewritten software."  DOR Letter Ruling 11-3 (Feb. 14, 2018).  But the Products are not "standardized or prewritten software."  For instance, the DOR has ruled digital certificates that authenticate end-users and allow access to a server "are sent to the Taxpayer's customers electronically" and "not subject to sales or use tax."  *Id.*  Further, as to the Robux Gift Cards, these are not taxable because Roblox is free-to-play[12] and "the sales and use taxes do not apply to access or use of software where the object of the transaction is acquiring a good or service and there is no charge for the use of software."  DOR Letter Ruling 12-8 (Nov. 8, 2013).  Likewise, the PSN+ Cards are not taxable under Massachusetts law for the reasons set forth in Argument § II.A, *supra*.

---

[11] Citing *Citrix Sys., Inc. v. Comm'r of Revenue*, 139 N.E.3d 293, 294, 298-99 (Mass. 2020), Defendant seemingly argues the PSP+ Card is taxable because it is a "fee[] charged for subscriptions to use online software products," and constitutes a "transfer[] of rights to use software installed on a remote server." MTD at 8:9-12. But *Citrix* involved "whether *fees charged for subscriptions* to use online software products are subject to Massachusetts sales tax," not whether vouchers or gift cards redeemable for said subscriptions—like the PSP+ Card—are subject to sales tax. *Citrix Sys., Inc.*, 139 N.E.3d at 294. Such cards do not constitute a "transfer[] of rights to use software installed on a remote server," and as the DOR has held, any sales tax "is due when the [cards] are redeemed, not when they are issued." DOR Directive 12-4.

[12] FOR PARENTS, https://corp.roblox.com/parents/ ("Roblox is free to download and free to play").

**2.     The Products Are Tax Exempt In New York**

Under New York law, any tax must be authorized by statute.  *See*, *e.g.*, *Am. Cablevision of Rochester, Inc. v. Jacobs*, 474 N.Y.S.2d 653, 655 (N.Y. App. Div. 1984).  In other words, New York statutes explicitly designate what is taxable, rather than imposing a blanket tax on all sales and carving out exceptions.  And digital products such as the Products are not included in the goods or services subject to either sales or use tax.  *See* N.Y. Tax L. §§ 1105 (outlining taxable goods under New York law), 1110 (outlining use tax); *see also* Catherine Chen, *Taxation of Digital Goods & Servs.*, 70 N.Y.U. ANN. SURV. AM. L. 421, 452-53, 452 n.169 (2015) (identifying New York as among the states that "either do not affirmatively impose sales tax on digital content or expressly exempt it from taxation"); NYSDTF REPORT ON THE TAXATION OF THE TELECOMMUNICATIONS INDUSTRY IN NEW YORK STATE (Oct. 2009)[13] ("In New York, digital products are not subject to sales tax.")

While Amazon points to numerous New York statutes regarding taxes that must be collected generally, including that it must collect applicable tax (MTD at 8:12-18), it never points to a specific New York statue authorizing it to collect taxes on the Products.  *See generally* MTD at 8-11.  Plaintiffs, in contrast, allege that the Products are non-tangible virtual goods that are sent electronically in the form of a unique code that is generated for the buyer after the purchase, and are thus tax exempt under New York law.  *See* SAC ¶¶ 15 (p. 5:14-16), 25-26 (pp. 8:8-9:8).

Under N.Y. Tax Law § 1105(a), a sales tax is imposed upon "[t]he receipts from every retail sale of tangible personal property, except as otherwise provided in this article." N.Y. Tax Law § 1105.  "Tangible personal property" is defined as "[c]orporeal personal property of any

---

[13] https://www.tax.ny.gov/pdf/stats/policy_special/telecommunications/2009/taxation_of_the_telecommunications_industry_in_ny_state_october_2009.pdf

1  nature"[14] with numerous exclusions and additions.  N.Y. Tax Law § 1101(b)(6).  The sole prong

2  that could possibly incorporate the Products is "pre-written computer software, whether sold as

3  part of a package, as a separate component, or otherwise, and regardless of the medium by means

4  of which such software is conveyed to a purchaser."  *Id.*  But the Products themselves are not

5  software, but mere virtual goods.  And any sales tax assessed under this prong (if it is due at all)

6  would be the responsibility of the software/service provider at the time of redemption, not at the

7  time of purchase of the virtual gift card/voucher.  Regardless, Amazon has waived this argument

8  by not raising it.  *See Gadda*, 511 F.3d 933, 937 n.2 (9th Cir. 2007).

9       The Robux Gift Cards are also exempt from sales tax as virtual "gift cards" or "gift

10  certificates."  *See, e.g.*, N.Y. Dep't of Taxation & Fin., Advisory Op. TSB-A-99(13)S (Mar. 1,

11  1999)[15] ("Gift certificates for a stated dollar amount, whether given away for no consideration or

12  sold to a customer, are not subject to sales tax.").  Amazon does not dispute that gift cards are not

13  subject to New York sales tax, instead arguing that under an Advisory Opinion[16] issued by the

14  NYSDTF, the Robux Gift Card is a "Point Card" and the PSP+ Card is a "Subscription Card,"

15  both of which are subject to sales tax.  MTD at 10:17-11:9.  This argument fails for two reasons.

16  *First*, the advisory opinion does not address that the Products are virtual goods rather than tangible

17  goods.  *See* Advisory Opinion (defining both "Point Cards" and "Subscription Cards" as "plastic

18  cards" and stating that "Petitioner sells access *codes printed on a paper receipt or plastic card*")

[14] N.Y. Tax Law § 1101 does not define "corporeal."  But Black's Law Dictionary defines "corporeal" as "[h]aving a physical, material existence; TANGIBLE."  CORPOREAL, BLACK'S LAW DICTIONARY (11th ed. 2019).  This clearly excludes virtually delivered (and thus non-tangible) goods.

[15] https://www.tax.ny.gov/pdf/advisory_opinions/sales/a99_13s.pdf.

[16] NYSDTF Office of Counsel Advisory Opinion Unit, TSB-A-15(25)S (June 3, 2015), https://www.tax.ny.gov/pdf/advisory_opinions/sales/a15_25s.pdf ("Advisory Opinion").

(emphasis added).  Thus, the Advisory Opinion's scope is limited to physical cards, not digitally delivered cards.  *See id.*  And *second*, a full reading of the Advisory Opinion shows that even a physical, plastic Robux Gift Card would be a "Dollar Value Card," not a "Point Card," and thus not subject to sales tax.  As the Advisory Opinion notes:

> "Point Cards are similar [to subscription cards] in that they contain point values that are used to *access aspects of the on-line gaming software* (such as additional levels or enhanced game play) or that may be redeemed to access a gaming application, related software or *access to digital content on a specific third-party gaming network for a period of time*. These include items available for assisting game play on the third-party gaming networks, downloadable game demonstrations, and extra game content (such as additional levels, new areas of game play, etc.).

Advisory Opinion (emphasis added).

In contrast, "Dollar Value Cards" are defined as "plastic cards containing *a specific face value dollar amount* (such as for $20.00) that will be used to purchase additional game content in a manner similar to the Points Cards listed above.  *Id.*  (emphasis added).  This distinction is crucial.  Robux Gift Cards do not, as a Point Card does, provide "access to digital content on a specific third-party gaming network for a period of time."  SAC ¶¶ 8, 10 (pp. 2:15-3:9, 3:13-4:2). Rather, they have a specific face value dollar amount that can be exchanged for virtual currency, which can be used to purchase "additional game content" in "a manner similar to the Point Cards," but with indefinite and permanent access to the purchased content.  *Id.*  As the Advisory Opinion states with respect to "Dollar Value Cards":

> The purchase of a gift certificate that may be used in full or part payment, up to the stated dollar value, for the purchase of unspecified goods and services at some future date generally is not considered to be a taxable transaction under Tax Law § 1105 at the time the certificate itself is purchased.

Advisory Opinion (emphasis added).  Thus, under New York law, the Robux Gift Cards are non-taxable "Dollar Value Cards."

### B.      Plaintiffs State A Claim For Breach of Contract

Defendant argues that the Court should dismiss Plaintiffs' breach of contract claim "because the contract that Plaintiffs identify—the COUs and incorporated Help pages—unambiguously allows the very conduct that Plaintiffs challenge." MTD at 20:25-26. This is wrong. Amazon's argument rests entirely on the taxability of the Products. Indeed, by Amazon's own admission, "Plaintiffs' contract with Amazon… permits Amazon to collect sales tax on products *when and as required by state law*." MTD at 21:19-20 (emphasis added). Amazon does not, and cannot, argue that it was authorized by the contract to overcharge Plaintiffs under the guise of "sales taxes" that are not authorized by state law. *See* SAC ¶¶ 37-38 (p. 13:7-15), 46-51 (pp. 22:11-23:7). And as demonstrated above, the Products are not subject to sales tax in Massachusetts or New York. Argument §§ II.A.1-2, *supra*. Thus, Amazon breached its contractual promise to only charge tax in compliance with "state and local rates."

Further, Amazon does not dispute that its contract explicitly represents that "[n]o tax is charged when purchasing gift cards." SAC ¶¶ 5 (p. 2:3-4), 37 (p. 13:7-9). But the Robux Gift Cards are "gift cards" under the laws of Massachusetts and New York. Argument § II.A, *supra*. Yet Amazon charges sales tax on them, breaching its contractual promise not to do so.

Amazon's only other argument is that "Plaintiffs also knew at the time of the transactions that sales tax would be collected" and that "Plaintiffs do not allege that, upon realizing they had been charged sales tax, they returned the Products and requested a refund." MTD at 6:5-11 (emphasis removed). This argument omits a crucial detail: Plaintiffs did not know that the sales tax that was collected was illegal. On the contrary, Amazon explicitly and impliedly promised to Plaintiffs that the taxes Amazon collected complied with "state and local rates." SAC ¶ 31 (p. 11:13-17). Thus, whether Plaintiffs knew the sales tax was collected does not present a defense

when Plaintiffs did not know the sales tax was illegal, and when Amazon represented the collection was legal.  *See American Oil Serv. v. Hope Oil Co.*, 194 Cal. App. 2d 581, 586 (Cal. App. Ct. 1961) ("[I]t is elementary that an excessive payment made in ignorance of the fact that it is excessive is recoverable.").[17]

### C. Plaintiffs Sufficiently Allege Violations Of Massachusetts, New York, And Washington's Consumer Protection Acts

#### 1. Plaintiffs State A Claim For Violations of The Massachusetts Unfair and Deceptive Business Practices Act

As discussed above, the Products were non-taxable items under the laws of Massachusetts. *See* Argument §§ II.A.-II.A.1, *supra*.  Nonetheless, Amazon argues that even if the Products should not have been taxed, Plaintiffs "fail to state a claim under Gen. Laws ch. 93A" because the "collection of the state sales tax did not occur in 'trade or commerce'" and Massachusetts' "administrative remedy for aggrieved taxpayers preempts Gen. Laws ch. 93A claims based on tax collection."  MTD at 11:28-12:3.  Both arguments are wrong.

*First*, Defendant argues the improper collection of the sales tax did not occur "in a business context" because it does not "have an entrepreneurial, commercial, or business purpose" or serve Amazon's "financial benefit or gain."  MTD at 12:6-8.  But unlike Amazon's cited authorities, Plaintiffs allege that Amazon failed to remit the sales tax to the DOR (or remitted it to third parties rather than the DOR).  SAC ¶¶ 40-46 (pp. 13:21-15:2).  Accordingly, Plaintiffs have alleged that Amazon's conduct served its "financial benefit or gain" or "commercial or business purpose."  *Contra Feeney v. Dell Inc.*, 908 N.E.2d 753, 771 (Mass. 2009) (no claim under ch. 93A where

---

[17] Amazon does not extend and thus waives any argument regarding remittance or exhaustion of administrative remedies as to Plaintiffs' contract claims.  Nor can Amazon make this argument because it would be irrelevant to whether Amazon breached its contract to not collect sales tax on gift cards.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SAC
CASE NO. 2:21-CV-01213-TL

"Dell *remitted the proceeds* from the tax collected to the Commonwealth") (emphasis added); *McGonagle v. Home Depot, U.S.A., Inc.*, 915 N.E.2d 1083, 1089 (2009) (same where defendant "*transmitted to DOR* all tax payments received from the plaintiffs and from the classes whom they proposed to represent") (emphasis added).

 *Second*, Defendant argues that "Massachusetts' exclusive administrative remedy [for taxpayers aggrieved by the assessment of a tax] preempts and precludes Plaintiffs' Gen. Laws ch. 93A claim."  MTD at 14:25-26 (citing Mass. Gen. Laws ch. 62C, § 41).  Defendant intentionally omits the entire text of the provision it cites.  Mass. Gen. Laws ch. 62C, § 41 states, "The remedies provided by section thirty-seven to forty, inclusive, shall be exclusive, whether or not the tax is wholly illegal.  But the word 'exclusive' in this section *shall not be construed* to deprive any person of a right of action at law in any federal court."  (Emphasis added).  Thus, the Massachusetts tax code explicitly states it is not the only remedy for an aggrieved consumer.

 In addition, numerous Massachusetts courts have held that "[a]lthough violations of laws and regulations are not always violations of c. 93A, § 2(a), such violations may – and frequently do – serve as the bases of c. 93A claims if the underlying conduct is unfair or deceptive … *even when some other mechanism exists for enforcing the statute or regulation*."  *Beauchesne v. New England Neurological Associates, P.C.*, 159 N.E.3d 728, 736 (Mass. App. Ct. 2020) (emphasis added) (holding that overcharging for medical records and bills was a violation of ch. 93A even though separate state enforcement mechanism existed); *see also Hershenow v. Enterprise Rent-A-Car Co. of Boston*, 840 N.E.2d 526, 531 (Mass. 2006) (rejecting argument that where statute governing car rental agreements "provides for civil fines and a public enforcement action[,] … private relief for violations of that statute is not available" through c. 93A); *Columbia*

1   *Chiropractic Group, Inc. v. Trust Ins. Co.*, 712 N.E.2d 93, 95-96 (Mass. 1999) (rejecting argument

2   that c. 93A claim should have been dismissed because agency had primary jurisdiction).

3        Further, Defendant's argument rests on the idea that Defendant is performing a

4   "ministerial function" by collecting taxes on behalf of the state.  But several courts have rejected

5   this argument when, as is the case here, the collection of the tax was unlawful and the tax was

6   never remitted to the appropriate state authorities.  *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 427

7   (S.D.N.Y. 2019) ("LLR was not performing a ministerial act on behalf of New York when it

8   collected the allegedly improper sales tax."); *Van v. LLR, Inc.*, 500 F. Supp. 3d 927, 940 (D.

9   Alaska 2020) (same).  Rather, "[v]iewed from the perspective of [Massachusetts] law, [Amazon]

10  simply overcharged its customers – whether that charge was labeled 'sales tax' or something else

11  is immaterial." *Porsch*, 380 F. Supp. 3d at 427; *Van*, 500 F. Supp. 3d at 940.  Both *Porsch* and

12  *Van* also distinguished cases like *McGonagle* from circumstances like those here in two respects.

13  In *McGonagle*, "the plaintiffs were not alleging that no sales tax should have been collected; they

14  were alleging that the amount that was collected was too much.  In contrast, here, plaintiff is

15  alleging that no sales tax should have been collected because she lives in a jurisdiction that does

16  not have a sales or use tax." *Van*, 500 F. Supp. 3d at 940.  Moreover, unlike *McGonagle*, Plaintiffs

17  here have alleged the sales tax was not remitted to the state (SAC ¶¶ 40-46), and "it would make

18  little sense to require [Plaintiffs] to apply for a refund from [Massachusetts] taxing authorities

19  when no [Massachusetts] tax was collected and none was remitted to the state." *Porsch*, 380 F.

20  Supp. 3d at 427.

### 2.   Plaintiffs State A Claim For Violations of New York General Business Law

21        As an initial matter, Defendant claims Fed. R. Civ. P. 9(b)'s "heightened pleading standard

22  [] applies [to Plaintiffs' GBL claims) because Plaintiffs' claims sound in fraud."  MTD at 17:16-

17.  Defendant is plainly incorrect.  "Claims under GBL §§ 349 [and] 350 are 'not subject to the pleading-with-particularity requirements of Rule 9(b)' … They 'need only meet the bare-bones notice-pleading requirements of Rule 8(a).'" *Manchanda v. Navient Student Loans*, 2020 WL 5802238, at *5 (S.D.N.Y. Sept. 29, 2020) (quoting *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)).  Thus, Plaintiffs must only "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kolebuck-Utz v. Whitepages Inc.*, 2021 WL 1575219, at *1 (W.D. Wash. Apr. 22, 2021).  And here, Plaintiffs have alleged that Amazon, rather than remitting collected tax to authorities, remitted collected tax to third party merchants for a period of time,[18] who in turn were responsible for remitting the tax to the state.  SAC ¶¶ 40-46 (pp. 13:21-15:2).  No more is required.

Moving on, Defendant argues that Plaintiffs' GBL claims are preempted by New York tax law because "[c]onsumers in New York seeking the return of sales taxes 'erroneously, illegally or unconstitutionally collected or paid … to a person required to collect tax' must apply for a refund to the NYSDTF," and this is a consumer's "exclusive remedy" MTD at 15:16-21 (emphasis removed) (citing N.Y. Tax Law §§ 1139(a), §1140).  But here, Plaintiffs allege that for a portion of the class period, Amazon did not and has not remitted the unlawfully collected charges to any state or local taxing authority.  SAC ¶¶ 40-46 (pp. 13:21-15:2). Specifically, Plaintiffs allege that

---

[18] Amazon claims "Plaintiffs do not allege even when Amazon might have failed to remit taxes to state authorities."  MTD at 17:12-13 (emphasis removed).  Yet Amazon had no trouble identifying the time period from Plaintiffs' pleadings and the documents incorporated therein.  MTD at 5 n.4 (claiming "Amazon has been collecting and remitting sales tax on third-party sales since at least 2019").  Whether this statement is true will be tested in discovery.  In the meantime, Plaintiffs have relied on all publicly available information, and Plaintiffs cannot be expected to have complete knowledge of information that is solely in Amazon's possession. *See*, *e.g.*, *Means v. City of Chicago*, 535 F. Supp. 455, 459 (N.D. Ill. 1982) ("We are at a loss as to how any plaintiff … is supposed to allege with specificity prior to discovery acts to which he or she personally was not exposed, but which provide evidence necessary to sustain the plaintiff's claim.").

---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"Amazon collected the sales tax it believed was due at the point of sale but placed the responsibility upon the merchant to disburse the sales tax to the relevant state … Amazon, in numerous instances, incorrectly collected the wrong sales tax and sent the collected taxes not to the relevant state authorities, but rather to its merchant partners." *Id.* ¶ 45 (p. 14:18-23). Accordingly, the "administrative remedy" Amazon proffers would be futile, and Plaintiffs' GBL claims are therefore not preempted. *Porsch*, 380 F. Supp. 3d at 427 (denying motion to dismiss for failure to exhaust administrative remedies of §§ 1139 and 1140 because "it would make little sense to require Porsch to apply for a refund from New York taxing authorities when no New York tax was collected and none was remitted to the state."); *see also id.* ("LLR was not performing a ministerial act on behalf of New York when it collected the allegedly improper sales tax. Viewed from the perspective of New York law, LLR simply overcharged its customers – whether that charge was labeled 'sales tax' or something else is immaterial."); *contra Davidson v. Rochester Tel. Corp.*, 558 N.Y.S.2d 1009, 1011 (N.Y. App. Div. 1990) ("[I]t [cannot] be said that plaintiff has demonstrated that administrative review is futile in this case, thereby permitting the maintenance of this action without first exhausting administrative remedies.").

Defendant does not address or even mention *Porsch*, instead relying on numerous inapposite cases where, unlike here, the sales tax was remitted to the state. In *Estler v. Dunkin' Brands, Inc.*, 691 F. App'x 3, 6 (2d Cir. 2017), for example, the plaintiffs did not allege "defendants failed to remit any charges collected to the appropriate state and municipal tax authorities." Moreover, *Estler* expressly left open the question decided by *Porsch* regarding "whether resort to this administrative remedy might ever be unnecessary if an additional fee has been fraudulently charged as a 'tax' yet *not* remitted to state or municipal authorities." *Estler*, 691 F. App'x at 6 n.2 (emphasis in original).

Defendant cites *Togut v. Forever 21, Inc.*, 285 F. Supp. 3d 643 (S.D.N.Y. 2018) and *Kupferstein v. TJX Cos.*, 2017 WL 590324 (E.D.N.Y. Feb. 14, 2017) for the proposition that courts in New York will dismiss lawsuits "even where the plaintiff properly alleges non-remittance." MTD at 17:3-5.  But *Togut* and *Kupferstein* held no such thing.  Rather, in both cases, the court explicitly took issue with the paucity of the plaintiff's allegations regarding non-remittance.  *See Togut*, 285 F. Supp. 3d at 647-48 (S.D.N.Y. 2018) ("Based exclusively on information and belief, Plaintiff contends that Defendants have not remitted the collected monies to the Department.  No further alleged facts or documents have been presented in support."); *Kupferstein*, 2017 WL 590324, at *2 (dismissing action where plaintiff argued in her opposition brief that defendant failed to remit the tax overcharge to taxing authorities but "plaintiff did not make this allegation in her amended complaint" and any implied allegations of such conduct were "conclusory" and "speculative"); *see also Porsch*, 380 F. Supp. 3d at 427 (distinguishing cases).[19]

Defendant also cites *Guterman v. Costco Wholesale Corp*, 927 F.3d 67 (2d Cir. 2019), but *Guterman* differs from this case in two important respects.  Unlike Plaintiffs here, the *Guterman* plaintiff alleged New York "received … what it was owed." *Guterman*, 927 F.3d at 69-70. Further, the challenged practice was not that the tax should not have been collected at all, but that it was over-collected because the plaintiff should have been charged sales tax on the reduced price of taxable items he purchased rather than on the full price.  *Id.* at 69; *see also Van*, 500 F. Supp. 3d at 940 ("[T]he plaintiffs were not alleging that no sales tax should have been collected; they were alleging that the amount that was collected was too much.  In contrast, here, plaintiff is

---

[19] Defendant's cite to *Gilbert v. Home Depot, Inc.*, 2014 WL 4923107 (W.D.N.Y. Sept. 30, 2014) is inapposite for this reason as well.  In *Gilbert*, the plaintiff did not allege non-remittance, just that the tax was improperly charged.  *See Gilbert*, 2014 WL 4923107, at *4.

alleging that no sales tax should have been collected because she lives in a jurisdiction that does not have a sales or use tax."). *Cohen v. Hertz Corp.*, 2013 WL 9450421 (S.D.N.Y. Nov. 26, 2013), is inapposite for this same reason. *See Cohen*, 2013 WL 9450421, at *3 (car rental company miscalculated sales tax owed under state laws applicable to plaintiff's sales, and plaintiffs did not challenge taxability of transaction, but rather the amount of tax charged).

Finally, Defendant's citation to *Holt v. Town of Stonington*, 765 F.3d 127 (2d Cir. 2014) is distinguishable because *Holt* had nothing whatsoever to do with tax collection. *Holt*, 765 F.3d at 131 ("Holt failed to exhaust available administrative remedies before filing this case. She withdrew her application for a zoning permit before Stonington zoning officials had acted on the application."). *Holt* thus provides no grounds to depart from the well-reasoned and more on-point *Porsch* opinion. Further, to the extent the Court follows *Holt* (and it should not), any dismissal should be without prejudice. *Holt*, 765 F.3d at 133 ("Because failure to exhaust can be remedied through the pursuit of administrative process, a dismissal for failure to exhaust available administrative remedies should be without prejudice.") (internal quotations omitted).

Last, Defendant argues that it is exempt from GBL § 349 (but not GBL § 350) because Defendant is performing a "ministerial function" by collecting taxes on behalf of the state. Courts have rejected this argument when, as is the case here, the collection of the tax was unlawful and the tax was never remitted to the appropriate state authorities. *See Porsch*, 380 F. Supp. 3d at 427 ("LLR was not performing a ministerial act on behalf of New York when it collected the allegedly improper sales tax."); *Van*, 500 F. Supp. 3d at 940 (same). The text of GBL § 349(d) is in accord with such an interpretation, as this section only provides a "complete defense" if the "act or practice is … *subject to and complies with the rules and regulations* of" New York State's Department of Taxation and Finance. GBL § 349(d) (emphasis added). Because the sales tax on

the Products was improper under New York law, it cannot possibly have been levied in compliance with the Department's "rules and regulations."

### 3.   Plaintiffs Properly Allege Claims Under The Washington Consumer Protection Act

Defendant argues that Plaintiffs' Washington Consumer Protection Act ("WCPA") claims fail because Amazon's "conduct did not occur in trade or commerce." MTD at 18:22-24. That is wrong. The Washington Legislature "broadly" defined the phrase "trade or commerce" to include "the sale of assets or services, and *any commerce* directly or indirectly affecting the people of the state of Washington." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 785, 719 P.2d 531 (1986) (quoting RCW 19.86.010(2)) (emphasis added). Indeed, "[t]he CPA, on its face, shows a carefully drafted attempt to bring within its reach[] *every* person who conducts unfair or deceptive acts or practices in *any* trade or commerce." *Short v. Demopolis*, 103 Wash. 2d 52, 61, 691 P.2d 163 (1984) (*en banc*) (emphasis in the original). Here, Plaintiffs allege that Defendant's unlawful collection of taxes on digital goods has occurred in "trade or commerce" because it "include[s] the sale of assets or services." SAC ¶ 59 (p. 24:6-7).

Amazon attempts to split hairs, claiming that "Amazon's *sales* of the allegedly non-taxable items might be commercial conduct, but its collection of tax on those items is not." MTD at 19:20-21 (emphasis in the original). Tellingly, Amazon fails to cite a single case in which any court made such a distinction. Amazon cites *Browne v. Avvo, Inc.*, 525 F. Supp. 2d 1249 (W.D. Wash. 2007), but that case concerned whether the WCPA applied to Avvo's free attorney ratings in which no assets or services were provided to users and no money was paid to Avvo. *Id.* at 1254. That is a far cry from the money paid by Plaintiffs and class members in connection with their purchases of non-taxable digital goods as alleged in this case. *See* SAC ¶ 64 (p. 25:1-5); *see also Stephens v. Omni Ins. Co.*, 138 Wash. App. 151, 176, 159 P.3d 10 (2007) (holding that the WCPA applied

to collection notices sent by a debt collection agency).  Further, whether Amazon chose to label the charge as a "'sales tax' or something else is immaterial" because "[v]iewed from the perspective of [Massachusetts and New York] law, [Amazon] simply overcharged its customers." *Porsch*, 380 F. Supp. 3d at 427.  Such overcharges undoubtedly occurred in "trade or commerce" because it involves "commerce directly or indirectly affecting the people of the state of Washington."  RCW 19.86.010(2); *see also Porsch*, 380 F. Supp. 3d at 428 ("LLR's alleged practice of over-charging customers under the guise of a 'sales tax' was consumer-oriented.  It reflects a standard or routine practice that could potentially affect similarly situated consumers.") (internal quotations and brackets omitted).

Amazon also argues that its improper collection of taxes from the sale of digital goods is "exempt" from suit under the WCPA.  MTD at 20:7-23.  Once again, Amazon is incorrect.  Specifically, Amazon asserts that "actions or transactions … permitted by any [] regulatory body or officer acting under statutory authority of this state or the United States" are exempt under the WCPA.  MTD at 20:7-8 (quoting RCW § 19.86.170).  But that is what this case is about, *i.e.*, was Amazon permitted to collect tax from Plaintiffs and the putative class members?  If, as Plaintiffs allege, Amazon was not permitted to collect taxes on the Products, then it cannot take shelter in the exemption set forth in RCW § 19.86.170.[20]  The Court should reject Amazon's strained interpretation of the WCPA.

---

[20] Amazon also argues that "heavily regulated activities are not subject to the WCPA."  MTD at 20:11-12.  Amazon cites *McCarthy Fin., Inc. v. Premera*, 182 Wash. 2d 936 (2015), but that case concerned a challenge to health insurance premiums set by the Washington State Office of the Insurance Commissioner that would require the court "to reevaluate rates approved by the OIC and thereby inappropriately usurp the role of the OIC." *Id.* at 943–44.  Here, Plaintiffs challenge sales taxes *improperly* charged by Amazon and that have not been authorized by any regulatory body at issue in this case.

Further, Plaintiffs are not asking the Court to "reevaluate" or challenge the viability of Massachusetts and New York tax law as Amazon suggests (MTD at 20:20-22).   Unlike in *McCarthy Finance, Inc. v. Premera*, 182 Wash. 2d 936, 943-44, 347 P.3d 872 (2015), where the plaintiffs were asking the court to "to reevaluate rates approved by the OIC and thereby inappropriately usurp the role of the OIC," Plaintiffs here are merely asking the Court to apply the tax law as written to Amazon's improper collection sales tax.  And rather than require the Court to engage in speculation as to what the sales tax may be, the rate has been set in stone by both the Massachusetts and New York tax agencies.  *See McCarthy Finance, Inc.*, 182 Wash. 2d at 943 ("[T]o the extent that claimants can prove damages without attacking agency-approved rates, the benefits gained from courts' considering CPA claims outweigh any benefit that would be derived from applying the filed rate doctrine to bar the claims.").

## III.   CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion. If the Court determines that the pleadings are deficient, Plaintiffs request leave to amend.  *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017) (lower court erred by denying leave to amend after dismissing amended complaint).

Dated: February 28, 2022                Respectfully submitted,

                                        **CARSON NOEL PLLC**

                                        By:  */s/ Wright A. Noel*
                                             Wright A. Noel

                                        20 Sixth Avenue NE
                                        Issaquah, WA 98027
                                        Telephone: (425) 837-4717
                                        Facsimile:  (425) 837-5396
                                        E-Mail: wright@carsonnoel.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*Pro Hac Vice*)
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice*)
Matthew A. Girardi (*Pro Hac Vice Forthcoming*)
Julian C. Diamond (*Pro Hac Vice Forthcoming*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: mroberts@bursor.com
            mgirardi@bursor.com
            jdiamond@bursor.com

*Attorneys for Plaintiffs*